Orville Leland DAVIS,
Petitioner-Appellant,

v.

ADULT PAROLE AUTHORITY,
Respondent-Appellee.

No. 78–3555.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 23, 1979.
Decided Nov. 27, 1979.

Orville Leland Davis, pro se, Charles S. Kamine, Cincinnati, Ohio, (Court-Appointed CJA), for petitioner-appellant.

William J. Brown, Atty. Gen. of Ohio, Richard David Drake, Asst. Atty. Gen., Columbus, Ohio, for respondent-appellee.

Before ENGEL and KEITH, Circuit Judges, and PECK, Senior Circuit Judge.

KEITH, Circuit Judge.

Petitioner appeals from a judgment of the district court denying without an evidentiary hearing his application for habeas relief pursuant to 28 U.S.C. § 2254. We reverse.

The January 1962 term of the Hamilton County, Ohio Grand Jury returned two separate indictments against petitioner, each indictment charging him with one count of malicious entry of a financial institution and one count of armed robbery.[1] Petition-

---

1. The April, 1962 Term of the Montgomery County, Ohio Grand Jury also indicted petitioner on one count of armed robbery. Upon arraignment, petitioner entered a plea of not guilty and the cause came on for jury trial. The jury returned a verdict of guilty as charged. On June 26, 1962, petitioner was sentenced to a term of ten (10) to twenty-five (25) years imprisonment. This indictment and conviction is not involved in the present appeal.

er was arraigned on June 11, 1963, and entered a plea of not guilty. The indictments were consolidated for the purpose of trial. On July 14, 1963, the court appointed Richard D. Harvey as counsel to represent petitioner in regard to these charges.

On October 23, 1963,[2] petitioner entered a plea of guilty to all counts as charged and was sentenced to a term of not less than twenty (20) years imprisonment on each of the counts charging malicious entry of a financial institution and a term of ten (10) to twenty-five (25) years imprisonment on each of the counts charging armed robbery. The court ordered that these sentences pre-viously imposed by the Court of Common Pleas of Montgomery County.[3]

Petitioner did not perfect an appeal as of right from said judgments. However, on August 20, 1969,[4] petitioner filed a petition in the Hamilton County Common Pleas Court to vacate judgment and sentence on grounds that the indictments were faulty.[5] On September 3, 1969, the court dismissed the petition for failure to state a cognizable claim.[6] No appeal was perfected from this judgment dismissing the petition. However, petitioner did file a motion for leave to appeal[7] in the Court of Appeals of Ham-

2. In an affidavit filed in support of his petition for habeas relief, petitioner asserts that he was first brought before the court on October 22, 1963. At this hearing, petitioner informed the court that he wished to withdraw his plea of not guilty and enter a guilty plea on each indictment. This offer to plead guilty, according to petitioner, resulted from representations from his family attorney, Joseph X. Schwartz, that a deal had been worked out whereby, in exchange for a guilty plea, the prosecution would *nolle prosequi* the second count of each indictment and recommend concurrent sentences. After accepting the pleas, the judge is reported to have sentenced petitioner to not less than twenty years on the first count of each indictment and 10 to 25 years on the second count of each indictment, with the sentences to run consecutive to each other.

Petitioner contends that after complaining vigorously, he was returned to the court on October 23, where he was permitted to plead anew and was resentenced. The affidavit asserts that pleas and sentences entered at this hearing again failed to correspond to petitioner's understanding of the plea agreement and that the court failed to inform him of his constitutional rights to a jury trial, to confront witnesses against him, against self-incrimination, and to appeal. (App. 100). Petitioner also alleges that the prosecutor whispered in his ear that he should plead guilty.

There is no court record of either of these proceedings. Apparently, neither petitioner's family attorney nor his court-appointed attorney was present. (App. at 99).

3. *See* footnote 1, *supra.*

4. The court notes that this date is approximately five years and 11 months after petitioner was convicted and sentenced.

5. The petition was filed pursuant to Ohio Revised Code § 2953.21 and alleged that:
"The omission of the word "malicious" from an indictment charging entrance into a finan-cial institution with intent to commit a felony, contrary to this section, renders such indictment insufficient to charge an offense under such statute." (App. at 36).

6. More specifically, the court held that as petitioner had entered a plea of guilty in open court and while represented by counsel, his convictions were not open to collateral attack by way of a petition to vacate judgment and sentence. (App. 43). However, we again note that while counsel had been appointed to represent petitioner, it is uncertain whether he was present at the time petitioner entered his guilty pleas and was sentenced. The only existing record of this hearing is the notation made on the court's file. (App. pp. 92–97). There is also no record indicating whether or not the court-appointed attorney was ever paid for his services. (App. 93). *See* note 2, *supra.*

7. While this motion purported to be an appeal from the judgment of conviction entered by the Court of Common Pleas of Hamilton County on October 23, 1963, the body of the motion stated in pertinent part:
"The following constitute the basis for this petition, former petition, did not set forth all my allegations.
　　*　　*　　*　　*　　*　　*
Wherefore, your petitioner prays that this Court cause notice of the filing of this petition (copy also mailed to Prosecuting Attorney, Hamilton County) and that he be granted a hearing as provided by RC 2953.21 and that upon hearing the judgment and sentence be vacated and held for naught" (App. 46, 51).

As respondent notes, petitioner was apparently attempting to file a combination "delayed appeal—original action post-conviction petition" in the appellate court. However, to the extent the motion can be deemed an original action post-conviction petition, petitioner was in the wrong forum. Under Ohio law, a Court

ilton County (App. 44) which was overruled by that court on June 19, 1970. (App. 79).

Six years later, on September 27, 1976, petitioner filed a motion in the Supreme Court of Ohio requesting leave to appeal from the June 19, 1970 judgment by the Court of Appeals of Hamilton County denying his motion for leave to appeal to that court. In an order dated November 19, 1976, the Ohio Supreme Court denied the motion.

On October 28, 1977, petitioner applied for a writ of habeas corpus in the United States District Court for the Southern District of Ohio asserting six grounds in support of his claimed entitlement to relief.[8] In answer to a show cause order, respondent filed a motion to dismiss the petition asserting, *inter alia*, that petitioner had failed to exhaust available state court remedies and that, because the lack of a transcript of the plea proceedings prejudiced its ability to respond, the application was subject to dismissal pursuant to Rule 9(a) of the Rules Governing Section 2254 cases.

In an order dated March 3, 1978, the district court dismissed the Sixth ground relied upon by petitioner for relief, *see* note 8, *supra*, for failure to exhaust state remedies. However, the court found that petitioner had either exhausted state remedies in regard to the other claims relied upon or that any further attempt to do so would be futile. Thus the court, after finding also that respondent had not been prejudiced by the delay involved in bringing this action, overruled respondent's motion to dismiss and ordered that a supplemental return be filed.

After respondent filed its supplemental return on March 28, 1978, the court reconsidered and concluded that petitioner's 14-year delay in filing the petition had prejudiced respondent's ability to respond to the petition. In an order entered May 24, 1978, the court dismissed the petition on the ground that it was "stale" both generally and within the meaning of Rule 9(a). The court based its finding of prejudice on the absence of a recorded transcript of the plea proceedings and the presumed unavailability of witnesses through the loss of memory of detail.

Petitioner contends that the judgment below must be set aside because Rule 9(a) contravenes the Suspension Clause of the Constitution of the United States,[9] or, in the alternative, the court below misinterpreted, and failed to comply with, the requirements of the Rule. We find merit in the latter contention and reverse. Rule 9(a) provides:

(a) Delayed petitions. A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

Given the Rule's potentially devastating impact on the availability of habeas relief to state petitioners, it must be carefully considered and liberally construed. As the court aptly noted in *St. Clair v. Hiatt*, 83 F.Supp. 585 (N.D.Ga.1949):

of Appeals is without jurisdiction to entertain a post-conviction action, the sentencing court having exclusive jurisdiction over such proceedings. *See* Ohio Revised Code § 2953.21(A).

**8.** Petitioner alleged that 1) the armed robbery count on each indictment violated the double jeopardy clause of the Fifth Amendment; 2) the indictments were so defective overall as to deprive the trial court of jurisdiction; 3) the plea proceedings were constitutionally infirm because the trial court failed to inform him of the consequences of his plea and his right to confront the witnesses against him, against self-incrimination and to a jury trial, before

accepting the pleas; 4) the plea and sentencing proceedings denied his right to effective assistance in that they were conducted without the presence of counsel; 5) the pleas were involuntary in that they were improperly induced by unfulfilled promises; and 6) the trial court improperly denied him credit for pre-trial detention time.

**9.** Art. I, Sec. 9, cl. 2 provides:

The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the Public Safety may require it.

Any statute which might tend to weaken its [habeas corpus'] efficiency or delay its availability or makes its use more difficult should be carefully considered and construed liberally in the light of its history and its benign purposes.

"Moreover, the principle has developed that the writ of habeas corpus should be left sufficiently elastic so that a court may, in the exercise of its proper jurisdiction, deal effectively with any and all forms of illegal restraint. The rigidity which is appropriate to ordinary jurisdictional doctrines has not been applied to this writ. * * * Only in that way can we give substance in this case to our previous statement that 'dry formalism should not sterilize procedural resources which Congress has made available to the federal courts.'" *Price v. Johnston*, 334 U.S. 266, 284, 68 S.Ct. 1049, 92 L.Ed. 1356.

83 F.Supp., at 586.

The district court's summary dismissal of petitioner's application for relief without allowing petitioner the opportunity to meet or rebut the state's allegation of prejudice to its ability to respond, or to show that the prejudice was based on grounds which even an earlier petition would not have avoided,

suggests that it applied Rule 9(a) as a statute of limitations.

■ Our review of pertinent Supreme Court decisions [10] and other authorities [11] persuades us that a rule which would permit a court to dismiss an action for habeas relief without any consideration of the equities presented renders the habeas corpus process inadequate to test the legality of a person's conviction and, thereby, constitutes a prohibited suspension of the writ. Therefore, we hold that the district court's application of the Rule as a strict statute of limitations here constituted error.

■ A more proper interpretation of Rule 9(a), consistent with the Suspension Clause, is that rather than imposing a statute of limitations, the Rule invokes the equitable doctrine of laches. As applied here, the doctrine posits a two-pronged test. First, the state must appear to have been prejudiced in its ability to respond to petitioner's claims. Second, the petitioner must be given the opportunity to meet or rebut the apparent prejudice to the state, or to show that whatever prejudice the state has suffered would not have been avoided had the petition been filed earlier.[12] As the

---

**10.** *See Heflin v. United States*, 358 U.S. 415, 420, 79 S.Ct. 451, 454, 3 L.Ed.2d 407 (1959) (Mr. Justice Stewart, joined by four other Justices, concurring) (In habeas corpus, "there is no statute of limitations, no *res judicata*, and . . . the doctrine of laches is inapplicable."); *Palmer v. Ashe*, 342 U.S. 134, 72 S.Ct. 191, 96 L.Ed. 154 (1957) (held that a prisoner could challenge the validity of his conviction 18 years after he had been convicted.); *Hermann v. Claudy*, 350 U.S. 116, 123, 76 S.Ct. 223, 110 L.Ed. 126 (1956) (overturned a state court's summary dismissal of a petition for habeas relief and held that the petitioner was entitled to a hearing on the petition even though 8 years had passed before the habeas action was commenced.); *Uveges v. Pennsylvania*, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127 (1938) (granted relief to a habeas petitioner who had been convicted in violation of his right to counsel even though the petitioner did not challenge his conviction for seven years.).

In *Herman, supra*, 350 U.S. at 123, 76 S.Ct. at 227, the Supreme Court noted that "[t]he sound premise upon which these holdings rested is that men incarcerated in flagrant violation of their constitutional rights have a remedy," regardless of the time lapse.

**11.** *See* generally, Note, Relieving the Habeas Corpus Burden: A Jurisdictional Remedy," 63 Iowa L.Rev. 392, 406 (1977); Clinton, Robert N., "Rule 9 of the Federal Habeas Corpus Rules: A Case Study on the Need for Reform of the Rules Enabling Act," 63 Iowa L.Rev. 15 (1977).

**12.** If the petition is filed within five years of the original conviction, the state has the burden of proving prejudice to its ability to respond to petitioner's claim. However, where a petition is filed over five years after the judgment of conviction, the Advisory Committee Note to Rule 9(a) states that prejudice to the State's ability to respond is presumed.

However, the Note makes clear that the primary import of the presumption is to increase a petitioner's burden of establishing entitlement to relief. The Note states that in the case of a petition filed after five years has passed, petitioner

has "the burden of going forward with evidence to rebut or meet the presumption" that the state has not been prejudiced by the passage of a substantial period of time. This does not impose too heavy a burden on the

court explained in *Giddens v. Isbrandtsen Co.*, 355 F.2d 125, 127 (4th Cir., 1966):

> Laches is sustainable only on proof of both of two elements: '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.' *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961). The latter contemplates the dispersal and inaccessibility of witnesses, the dimming recollections and other disadvantages incident to the lapse of time. Thus, the presence of laches is ascertained by a balancing of the claimant's delay with the proffered excuse, if any, against the defendant's consequent detriment. The determination demands a weighing of equities. These in turn depend upon an assay of the circumstances.

Thus, to the extent that application of Rule 9(a) is predicated upon a finding of inexcusable delay on a petitioner's part in filing an application for habeas relief, it constitutes no more than a legitimate procedural device designed to prevent abuses of the habeas corpus process. In such cases, it is our view that Rule 9(a) does not conflict with the Suspension Clause. For while the Rule, so construed, does permit a court the discretion to summarily dismiss a petition after it has considered and assessed the equities of a particular case, it can never be used as an absolute bar to the prosecution of a claim for habeas relief.

This construction of Rule 9(a) also comports with the way courts have generally dealt with delayed habeas petitions. While attempting assiduously to avoid the language of earlier Supreme Court cases stating implicitly and, sometimes, explicitly, that the doctrine of laches has no place in the habeas context, *See Heflin v. United States*, 358 U.S. 415, 418, 79 S.Ct. 451, 3

L.Ed.2d 407 (1959); *Palmer v. Ashe*, 342 U.S. 134, 72 S.Ct. 191, 96 L.Ed. 154 (1957); *Herman v. Claudy*, 350 U.S. 116, 123, 76 S.Ct. 223, 110 L.Ed. 126 (1956); *Uveges v. Pennsylvania*, 335 U.S. 437 (1938), courts, faced with delayed petitions, have consistently applied the doctrine while, at the same time, refusing to call it by its proper name. Seizing upon the fact that a petitioner seeking habeas relief ordinarily has the burden of establishing a violation of his constitutional rights, *See Caudill v. Cowan*, 367 F.Supp. 905, 907 (E.D.Ky.1973), *aff'd* 500 F.2d 1402 (6th Cir. 1974), *cert. denied*, 419 U.S. 1041, 95 S.Ct. 528, 42 L.Ed.2d 317 (1974), *Phillips v. Black*, 367 F.Supp. 774, 776 (E.D.Ky.1973), *aff'd* 497 F.2d 924 (6th Cir. 1974); *Hawkins v. Bennett*, 423 F.2d 948, 951 (8th Cir. 1970); *Bradley v. Cowan*, 500 F.2d 380, 381 (6th Cir. 1974); *Goins v. McKeen*, 605 F.2d 947 (6th Cir. 1979), courts have used the doctrine to increase the petitioner's burden of proof in establishing a constitutional violation. This approach usually resulted in such statements as that while an extended time lapse before asserting a claim for relief would not serve as an absolute bar to habeas relief, it might serve to increase "the burden on the petitioner to overcome the presumption of the regularity of his conviction," *Black, supra* at 776. *See also Hawkins, supra* at 951, *Bradley, supra* at 381; or that "the lapse of time affects the quantum of required proof as well as the good faith and credibility of the moving party. [See] *Heflin v. United States*, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959)." *Dean v. State of North Carolina*, 269 F.Supp. 986, 992 (1967).

██ In this case, the writ is sought to test the constitutionality of 14-year-old convictions. However, as made clear above, the effect of this not inconsiderable delay is not the foreclosure of an opportunity for the testing of the constitutionality of the

---

petitioner. He usually knows what persons are important to the issue of whether the state has been prejudiced. Rule 6 can be used by the court to allow petitioner liberal discovery to learn whether witnesses have died or whether other circumstances prejudicial to the state have occurred. Even if the petitioner should fail to overcome the presumption of prejudice to the state, he is not automatically barred from asserting his claim. As discussed previously, he may proceed if he neither knew nor, by the exercise of reasonable diligence, could have known of the grounds for relief.

Advisory Committee Note, Rule 9, Rules Governing 28 U.S.C. § 2254 cases.

conviction through the habeas process, but rather, the creation of a presumption of prejudice to the state's ability to respond to the petition, and the shifting to petitioner of the burden of rebutting the presumption.[13]

In the instant case, the sole ground cited by the state in support of its allegation of prejudice resulting from petitioner's delay in filing is the absence of the trial transcript. Clearly petitioner was not in a position to either induce or prevent such prejudice.[14] The state claimed no additional prejudice resulting from petitioner's delay which petition might have acted to prevent. In the language of Rule 9(a), the prejudice occasioned by the delay was based on grounds "of which [petitioner] could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred." Thus, although the state may indeed be prejudice by the absence of the transcript, it would appear that the excusability or inexcusabili-

ty of petitioner's delay does not bear on that prejudice.

Ordinarily, we would send petitioner's application back to the district court for a new determination on the prejudice and excusable delay issues pursuant to Rule 9(a). However, to remand the instant case back to the district court solely for a full-fledged hearing on the applicability of Rule 9(a) would serve only to needlessly delay the delivery of justice. Unless additional prejudice flowing from petitioner's lack of diligence is adduced by respondent or the court on remand, petitioner has met the requirements of Rule 9(a) and the district court should proceed to a decision on the merits.

Accordingly, we remand petitioner's claim for habeas relief back to the district court for a determination of any additional grounds on which the state may be presumed to be prejudiced by petitioner's delay, with instructions that petitioner be given an opportunity to rebut such grounds of prejudice as "inexcusable" on his part.

**13.** As already noted, *see* note 12, *supra*, and discussion, *supra* at pp. 414–415. To state that petitioner must rebut the "presumption" of prejudice is merely to say that he has a heavier burden of establishing a constitutional violation. In the instant case for instance, petitioner's conviction is 14 years old and that there are no transcripts of the plea proceedings.

In his order of dismissal, Judge Hogan stated that:

"The availability of witnesses and the loss of memory of detail are sufficiently prejudicial to merit dismissal under Rule 9." (App. 115). However, it does not appear what evidence he used to determine that the witnesses were unavailable or that the available one had no memory of details.

However, it does appear that several of the official participants in events that transpired on October 22 and 23, 1962, are still available. For instance, Richard Haney, listed as appointed counsel on the Hamilton County Common Pleas docket sheets (App. 92–97), Joseph A. Schwartz, listed as the family attorney by petitioner in his affidavit (App. 99), and Judge Leis, are all living members of the Cincinnati Bar. A hearing may well produce some evidence to resolve the factual disputes. While Judge Hogan stated in his order of Dismissal that:

The Court should have at least satisfied itself that all that could with reason be done, had in fact been done, either through live or deposition testimony before dismissing this

petition. *See Chessman v. Teets*, 354 U.S. 156 [, 77 S.Ct. 1127, 1 L.Ed.2d 1253] (1957). As the court stated in *Hawkins, supra:*

We wish to add (although it should be obvious) that nothing stated herein is intended to indicate an opinion on the merits of appellant's claims. On remand, appellant will, of course, have the burden of proving his allegations. We also recognize that the passage of time between appellant's conviction and his request for relief renders the gathering of evidence difficult. We do not condone the long delay. However, if appellant's constitutional rights were violated in 1926, the passage of 44 years does not serve to cure the wrong. And he, just as the man recently convicted, must be afforded a meaningful opportunity to prove his claims.

423 F.2d at 951. *See Jackson v. Estelle*, 570 F.2d 546, 547 (5th Cir. 1978); *Sutton v. Lash*, 576 F.2d 738 (7th Cir. 1978).

**14.** A letter from the Hamilton County Official Court Reporter's Office, attached to petitioner's pro se brief filed on this appeal, states that the chief reporter has been unable to find any record of the proceedings. Additionally, the letter states that the Court Reporter at the time had stated that as the law did not require the reporting of pleas at the time neither were present in the court room during the pleas proceedings.

 

For the foregoing reasons, the judgment of the district court summarily dismissing the petition is reversed and the cause is remanded for further proceedings.