James Thomas **JEFFERSON**

v.

Michael **DUTTON, Warden, et al.**

No. 82–3315.

United States District Court,
M.D. Tennessee,
Nashville Division.

March 30, 1985.

Charles Ray, Nashville, Tenn., for petitioner.

John F. Southworth, Jr., Kimberly Dean, Asst. State Atty. Gen. for State of Tenn., Nashville, Tenn., for respondent.

## MEMORANDUM

JOHN T. NIXON, District Judge.

Petitioner James Thomas Jefferson brings this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This cause came on for hearing on September 28, 1984. For the reasons discussed below, the petition for a writ of habeas corpus will be GRANTED.

The petitioner is a black citizen who was indicted for first degree murder by the Davidson County Grand Jury during its May 1968 term. The indictment was filed on July 23, 1968, to which petitioner filed a plea of abatement alleging systematic exclusion of blacks from the Davidson County grand juries and petit juries. Petitioner's first trial,[1] which began on October 28, 1969, resulted in a hung jury. At his second trial,[2] which began on January 18, 1971, Mr. Jefferson again alleged that blacks had been systematically excluded from the grand and petit juries. After the trial court overruled his objection, he was convicted and sentenced to ninety-nine (99) years in the state penitentiary.

Mr. Jefferson appealed to the Tennessee Court of Criminal Appeals, which remanded the case to the trial court to conduct an evidentiary hearing on the issue of systematic exclusion of blacks from petit and grand juries. After granting certiorari, the Tennessee Supreme Court affirmed the appeals court decision to remand. *Tennessee v. Jefferson,* 529 S.W.2d 674 (Tenn.1975). Upon remand, the trial court limited petitioner's proof to the composition of the

grand jury that actually indicted him and the petit jury that actually convicted him. The trial court concluded that there had been no systematic exclusion of blacks from either petitioner's grand jury in 1968 or his petit jury in 1971. In 1977, the Court of Criminal Appeals affirmed this decision, and in October 1977, the Tennessee Supreme Court denied permission to appeal. *Jefferson v. Tennessee,* 559 S.W.2d 649 (Tenn.Crim.App.1977). Petitioner brought this action pro se in April 1982. Counsel was appointed on June 14, 1982.

Petitioner contends that his 1968 indictment must be quashed and his subsequent conviction in 1971 must be vacated because there was systematic exclusion of blacks from grand and petit juries in Davidson County during and preceding his indictment and conviction. He maintains that this alleged exclusion violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution as well as the Sixth Amendment requirement that petit juries represent a cross section of the community.[3]

Because petitioner brings this action under 28 U.S.C. § 2254, the Court must first determine if petitioner has satisfied the habeas corpus requirements; that is, requirements as to the timeliness of the raising of the issue at trial, the exhaustion of state remedies required in Section 2254(b), (c), and the mandate of Section 2254(d). The Court finds that petitioner timely raised the issue of systematic exclusion of blacks on the grand juries, *Francis v. Henderson,* 425 U.S. 536, 538, 540–42, 96 S.Ct. 1708, 1709, 1710–1712 (1976) and, as both parties agree, has fully exhausted that claim in state court.[4]

---

1. The first jury was composed of seven (7) whites and five (5) blacks.

2. The second jury was composed of ten (10) whites and two (2) blacks.

3. For the reasons discussed below, the Court does not deem it necessary to examine the constitutionality of petitioner's petit jury.

4. The respondent maintains that the petitioner's "claim" as to racial discrimination in the selec-

tion process of the grand jury foreman was not exhausted. Therefore, the respondent contends that the petition contains both exhausted and unexhausted claims and must be dismissed pursuant to *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). It is the Court's opinion that petitioner is alleging a single claim of discrimination in the selection process of the grand jury, including the selection of the foreman as the thirteenth member of the grand jury. Although petitioner may have brought a sepa-

As to the Section 2254(d) prerequisites, this Court finds that petitioner has demonstrated that he did not receive a full, fair, and adequate hearing in state court as required in Section 2254(d)(6) and that he was otherwise denied due process of law in state court proceedings as required in Section 2254(d)(7). The basis for this finding is that the state courts limited petitioner's proof to the composition of the actual 1968 grand jury that indicted him. In other words petitioner was not permitted to put on proof of the composition of prior grand juries. In *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), the Supreme Court held that petitioners were required to prove a "degree of underrepresentation ... by comparing the proportion of the group in the total population to the proportion called to serve ... over a significant period of time." *Id.* at 494, 97 S.Ct. at 1280. The Court referred to this method of proof as the rule of exclusion. *Id.* When the state courts refused to permit petitioner the opportunity to present evidence as to the composition of prior grand juries, they denied the full, fair, and adequate hearing contemplated by Section 2254(d)(6) and due process of law as required by Section 2254(d)(7).[5]

■ Having determined that the petition for habeas corpus was properly brought under 28 U.S.C. § 2254, the Court must ascertain whether an equal protection violation occurred in the context of the grand jury selection process. In *Castaneda*, the Court held that the initial burden is on the petitioner to make out a prima facie case of racial discrimination in the selection of grand jury members by showing that the process employed resulted in a substantial underrepresentation of his race. *Id.* at 494, 97 S.Ct. at 1280. To establish substantial underrepresentation, petitioner must show that his race is a distinct class singled out for different treatment under the procedure, as written or applied, that the rule of exclusion, that is, the degree of underrepresentation, has been satisfied, and that the actual procedure employed by the state was susceptible to abuse. *Id.*

■ The parties agree that petitioner has made out a prima facie case of racial discrimination in the selection of grand juries. As to the first element in the three-prong test in *Castaneda*, blacks are clearly a suspect category for purposes of equal protection analysis. *See Hernandez v. Texas*, 347 U.S. 475, 478, 74 S.Ct. 667, 670, 98 L.Ed. 866 (1954). Second, petitioner has satisfied the rule of exclusion. Evidence was presented that in the decade prior to petitioner's indictment (1958–1968), there were thirty-three (33) grand juries. Each grand jury was composed of thirteen members who were selected by criminal court judges in Davidson County. Of those thirty-three, seventeen grand juries had only one black member. Seven grand juries had no blacks, and the number of blacks on eight grand juries was unknown. There were two blacks on petitioner's grand jury. The black population of Davidson County was approximately nineteen percent during the period in question. All twenty-five of the grand juries, for which data is available, had a percentage of blacks that was significantly less than the percentage of the population of blacks in Davidson County. Thus, the Court concludes that petitioner has satisfied the rule of exclusion.

Petitioner has also satisfied the third element of the *Castaneda* test by showing that the appointing judges under the key-man system[6] were aware of the race of the grand jurors that they appointed. Such a procedure is clearly susceptible to abuse. *See Rose v. Mitchell*, 443 U.S. 545, 566, 99 S.Ct. 2993, 3005, 61 L.Ed.2d 739 (1979) (Tennessee's key-man system susceptible to

---

rate Section 2254 claim for discrimination in selecting the foreman only, *see Rose v. Mitchell,* 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979), he chose to state his claim as to the entire process.

**5.** In fact, it is the Court's opinion that without evidence of other grand juries, it would be virtually impossible to prove *systematic* exclusion.

**6.** For a description of Tennessee's key-man system, see *Mitchell,* 443 U.S. 545, 548 n. 2, 99 S.Ct. 2993, 2996 n. 2, 61 L.Ed.2d 739 (1979).

abuse). *See also Castaneda,* 430 U.S. at 497, 97 S.Ct. at 1281–82 (Texas' key-man system susceptible to abuse). Because petitioner has satisfied all three elements of the *Castaneda* test, the Court finds that he has made out a prima facie case in that blacks were substantially underrepresented in the grand jury selection process during the decade from 1958 to 1968.

■ Once a habeas corpus petitioner establishes a prima facie case of a violation of his equal protection rights, the burden shifts to the respondent to rebut that case. *Castaneda,* 430 U.S. at 495, 97 S.Ct. at 1280. At this stage, the state must show "that permissible racially neutral selection criteria and procedures have produced the monochromatic result." *Alexander v. Louisiana,* 405 U.S. 625, 631–32, 92 S.Ct. 1221, 1225–26, 31 L.Ed.2d 536 (1972).

■ In order to determine if the state has successfully rebutted petitioner's prima facie case, a court is permitted to consider disclaimers by appointing authorities that race did not play a role in the appointment process, but such testimony standing alone may be insufficient to rebut the presumption of discrimination. *Alexander,* 405 U.S. at 632, 92 S.Ct. at 1226. Under these circumstances, the burden is on the trial court to use the greatest judicial scrutiny in evaluating the testimony. *United States v. Perez-Hernandez,* 672 F.2d 1380, 1387 (11th Cir.1982) *(per curiam ).*[7] Furthermore, the trial court should look beyond the conscious attitude of the appointing authority to determine if the "result bespeaks discrimination." *Alexander,* 405 U.S. at 632, 92 S.Ct. at 1226 (quoting *Hernandez v. Texas,* 347 U.S. at 482, 74 S.Ct. at 672–73).

In the case at bar, three grand juries were selected by the criminal court judges for Davidson County each year during the period from 1958 to 1968 using the key-man system. In 1971, three years after petitioner's indictment, the County changed to a system whereby both grand jurors and petit jurors were selected from computer-generated lists. During the decade in question, most of the jurors were appointed by the Honorable Raymond H. Leathers, who began serving in Division I of the Davidson County Criminal Court in 1958, and the Honorable John L. Draper, who began serving in Division II in October 1960. These two judges appointed twelve jurors plus one foreman to each grand jury. Documented evidence as to the racial composition of the grand juries is available for all but five of the grand juries and all twenty-six foremen. All twenty-six of the foremen were white, and only fourteen of the 252 jurors were black. Petitioner introduced testimonial evidence as to five additional grand juries and seven additional foremen. Of the total of thirty-three grand jury foremen, all were white. Of the twenty-six grand juries with a total of 312 non-foreman positions, no more than twenty (6.45%) were black.[8]

■ The testimonies of Judge Draper and Judge Leathers deny any racial bias in the selection process. The evidence indicates that they depended on first-hand knowledge and referrals from friends and civic groups as the basis for recruiting grand jurors. Both judges used objective guidelines to select jurors; the juror characteristics sought included citizenship activities, maturity, work experience, standing in the community, and general qualities of good citizenship.[9] Of primary concern to

---

**7.** *Perez-Hernandez* involved a due process challenge to the federal grand jury foreman selection process under the Fifth Amendment. Although the court in *Perez-Hernandez* held that criminal defendants could challenge racial discrimination in the selection of federal foreman, *Id.* at 1385–86, the Supreme Court has recently overruled that position. *See Hobby v. United States,* —— U.S. ——, 104 S.Ct. 3093, 3099, 82 L.Ed.2d 260 (1984) (a federal grand jury foreman does not possess the same authority as

Tennessee's foreman; therefore, racial makeup of federal grand jury foremen was not susceptible to Fifth Amendment due process attack).

**8.** The numbers do not refer to replacement jurors.

**9.** The Court admitted the deposition testimony of each judge concerning grand jury foreman selection in *Briggs v. Thomas,* No. 81–3859 (M.D.Tenn. filed April 19, 1983). Although

the Court, however, is not the criteria used to select actual grand jurors, but the pool from which those jurors were chosen. It is the judgment of the Court that the effect of the process by which the pool of potential jurors was formed was excessively weighted toward the white community and served to exclude potential black grand jurors. This conclusion is buttressed by the fact that all but one of the twenty-six juries had zero or one blacks and by the fact that not one of the thirty-three foremen selected was black. "Statistics are not, of course, the whole answer, but nothing is as emphatic as zero...." *United States v. Hinds County School Board,* 417 F.2d 852, 858 (5th Cir.1969), *cert. denied,* 396 U.S. 1032, 90 S.Ct. 612, 24 L.Ed.2d 531 (1970). It is the judgment of the Court that the state has failed to rebut the prima facie case of discrimination. *See Castaneda,* 430 U.S. at 494–95, 97 S.Ct. at 1280.

■ The state, however, seeks to invoke Rule 9 of the Rules Governing Section 2254 Cases in United States District Courts and argues that petitioner should be denied his habeas corpus relief because he has brought a "delayed petition." Rule 9(a) states as follows:

: (a) Delayed petitions. A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

Rules Governing § 2254 Cases in the United States District Courts, Rule 9(a), 28 U.S.C. foll. § 2254. Rule 9(a) does not specify the length of delay that is necessary to invoke the rule but the Advisory Committee Note accompanying Rule 9(a) states that if petitioner waits longer than five years after the judgment of conviction, the delay is presumed prejudicial to the state. Rule 9(a) is not designed to be a

statute of limitations after the expiration of which a petitioner would be barred from seeking habeas corpus relief. *Moore v. Smith,* 694 F.2d 115, 117 (6th Cir.1982), *cert. denied,* 460 U.S. 1044, 103 S.Ct. 1442, 75 L.Ed.2d 798 (1983). Rule 9(a) has been treated in this circuit as a codification of the doctrine of laches as applied to habeas corpus petitions. *Id.* The Sixth Circuit has held that the district court must apply a two-pronged test. *Davis v. Adult Parole Authority,* 610 F.2d 410, 414 (6th Cir.1979). First, there must be apparent prejudice to the state, and second, the petitioner must be afforded the opportunity either to rebut the appearance of prejudice to the state or to show that the prejudice was not the result of the delay. *Id.* Furthermore, the state may not prevail unless the delay by petitioner was inexcusable. *Id.* at 414–15. The *Davis* court also warned that because of the rule's potentially devastating impact, the trial court must give careful consideration and liberal construction to its invocation. *Id.* at 413. "[T]he Court must use its discretion in weighing the equities involved [in invoking Rule 9(a)]." *Cotton v. Mabry,* 674 F.2d 701, 704 (8th Cir.1982) (cited with approval in *Moore,* 694 F.2d at 119).

■ In the instant case petitioner has brought his petition eleven years after his conviction but less than five years after fully exhausting his claim in state court. Although petitioner's delay exceeded the five year limit discussed in the Advisory Committee Note to Rule 9, this delay must be considered in light of the fact that he had actively pursued his relief on this issue in the state courts until 1977. Inasmuch as petitioner was actively pursuing his state court remedies pursuant to the systematic exclusion claim from 1971 to October 1977, the Court must consider whether the failure to file this claim in federal court until April 1982 dictates dismissal via Rule 9(a). Pursuant to the warning of the Sixth Circuit in *Davis* that Rule 9(a) should be liberally construed, 610 F.2d at 413, the five years should not begin running so as to invoke the presumption of prejudice until the petitioner is shown to have unreason-

---

*Briggs* involved only a challenge to grand jury foremen, both parties agree that basically the

same criteria were important to the judges in the selection of other grand jurors.

ably delayed his relief in state courts or until his attempts for relief in state courts have been exhausted. This liberal construction is even more appropriate when, as in this case, the prisoner must proceed to evaluate his claims after exhaustion without benefit of counsel. In the Court's opinion less than five years after exhausting a claim in state court constitutes excusable delay under the circumstances of this case. It is the judgment of the Court that because the requisite five years had not passed after the petitioner had exhausted his state remedies on this claim, there is no presumption of prejudice to the state in this case.

■■■ Inasmuch as there is no presumption of prejudice, the state must prove prejudice in order to invoke Rule 9(a). *Davis,* 610 F.2d at 414 n. 12 ("[i]f the petition is filed within five years after the judgment of conviction, the state has the burden of proving prejudice to its ability to respond to petitioner's claim"). The only evidence presented to the Court as to prejudice is the following stipulation:

1. If Thomas Shriver were called as a witness in this case, he would testify as follows:

(a) From the time of the indictment of James Thomas Jefferson until the present, Thomas Shriver has been the District Attorney General for Davidson County, Tennessee. He participated in both trials of the petitioner.

(b) General Shriver has checked the Criminal Court Clerk's office and discovered that all of the physical evidence from this prosecution has, at some time in the past, been destroyed.

(c) Given the complexity of evidence in this case, the unavailability of the physical evidence in this case, the number of witnesses, and the length of time since the prosecution, it would be at best improbable and probably impossible for the State to remarshall its evidence and retry the petitioner.

Affidavit of Thomas Shriver, at 12. It is the opinion of the Court that this stipulation fails to demonstrate prejudice to the state as a result of the delay. The stipula-

tion concerning General Shriver's testimony does not indicate when the physical evidence was destroyed, and General Shriver's highly speculative observation about the availability and memory of witnesses does not specify when those witnesses might have become unavailable to testify for the state. Failure of the respondent to demonstrate that the petitioner's delay results in prejudice to the state dictates the conclusion that no prejudice has been proved for purposes of Rule 9(a). *See Davis,* 610 F.2d at 416 ("although the state may indeed be prejudice [sic] by the absence of the transcript, it would appear that the excusability or inexcusability of petitioner's delay does not bear on that prejudice"). *See also McDonnell v. Estelle,* 666 F.2d 246, 254 (5th Cir.1982) (evidence submitted did not show prejudice so as to invoke Rule 9(a)). It is the judgment of the Court that the state has not proved prejudice in this case.

An ORDER will be entered contemporaneously with this Memorandum.

### ORDER

For the reasons discussed in the accompanying Memorandum, the petition for a writ of habeas corpus is GRANTED. The State of Tennessee is ORDERED to re-indict the petitioner within ninety (90) days or release him from custody.