Louis M. FORD, Petitioner-Appellant,

v.

SUPERINTENDENT, KENTUCKY
STATE PENITENTIARY,
Respondent-Appellee.

No. 80–3528.

United States Court of Appeals,
Sixth Circuit.

Argued June 14, 1982.

Decided Sept. 9, 1982.

Rehearing and Rehearing En Banc Denied
Oct. 27, 1982.

Kevin Michael McNally, Asst. Public Advocate, Frankfort, Ky., for petitioner-appellant.

Steven L. Beshear, Atty. Gen. of The Com. of Ky., J. Gerald Henry, Joseph R. Johnson, Asst. Attys. Gen., Frankfort, Ky., for respondent-appellee.

Before LIVELY and JONES, Circuit Judges, and CECIL, Senior Circuit Judge.

LIVELY, Circuit Judge.

Petitioner Ford appeals from denial by the district court of his application for a writ of habeas corpus. Ford was indicted on February 9, 1954 for the crime of robbery with a deadly weapon. He pled not guilty and the court appointed an attorney to defend him and his three co-defendants. On the date set for trial Ford withdrew his not guilty plea and entered a guilty plea to the lesser charge of assault with intent to rob. On the same day, March 8, 1954, Ford was sentenced to serve 21 years in the Kentucky State Reformatory. Because of an intervening federal sentence, an intervening incarceration in Florida, and two unsuccessful parole attempts, Ford is still in state custody.

In 1968, fourteen years after his conviction, Ford filed a motion in state court to vacate the 1954 judgment. The motion, which Ford made under oath, listed three grounds for vacating his conviction: (1) that he was denied counsel at his preliminary hearing; (2) that his counsel, appointed approximately one month before the date set for trial, was ineffective and had coerced and intimidated him into pleading guilty; and (3) that he was the victim of an illegal search and seizure. He did not allege that his appointed counsel was not present at the change of plea and sentencing. The motion to vacate was denied.

In 1970 Ford filed a second motion to vacate in the state court where he was convicted. In this motion the prisoner claimed that he had never had an attorney during the entire 1954 proceedings and that the record which showed the appointment of counsel had been altered. This motion was denied and in his brief on appeal Ford claimed for the first time that he was "alone" at the time he changed his plea and was sentenced. Contrary to his sworn statement in his first state post-conviction proceedings where he conceded that counsel had been appointed to represent him approximately one month before his scheduled trial date in 1954, he now alleged, also under oath, that counsel had never been appointed to represent him. The judgment of the trial court denying the second motion to vacate was affirmed.

On December 8, 1977 petitioner's *pro se* application for a writ of habeas corpus was filed in district court and the respondent filed a return. Counsel was appointed and Ford has had legal assistance throughout these proceedings. The claim for habeas relief was based on the allegation that Ford had been denied "the presence of counsel at the time of plea and sentence."

The case was referred to a magistrate who conducted an evidentiary hearing on July 24, 1978. The petitioner Ford testified at the hearing and one month later filed a motion for a "supplemental evidentiary hearing" for the purpose of receiving the testimony of his co-defendant in the 1954 proceedings, George Elmer Hamilton. This motion was overruled, but the magistrate granted leave to take Hamilton's deposition in Chicago, Illinois, the place of his residence. Hamilton testified by deposition that he was not aware that the 1954 state court records contained an entry noting the appointment of an attorney to represent him and Ford. He said he had never met the attorney, Robert B. Halloran, whose name appeared, and "The court, in order to cover up its own inadequacies, might have put his name there." He stated that there was no attorney present when he and Ford changed their pleas and were sentenced to 21 years.

Hamilton acknowledged on cross-examination that he had been convicted of two felonies after his release from the Kentucky prison: armed robbery in 1961 and interstate transportation of forged securities in 1971. He testified to a religious conversion in 1971 and stated that he had been involved in many community activities since his last release from prison.

The magistrate noted the fact that Ford had waited 14 years before seeking any relief from his conviction and that his post-conviction motions in state court were inconsistent in their claims concerning the assistance of counsel. In the first motion he stated under oath that an attorney was appointed to represent him, but had coerced and intimidated him to plead guilty. In his second motion, also under oath, he claimed that no attorney was ever appointed to represent him. The magistrate also stated that he had observed Ford as he testified. All of these factors led the magistrate to conclude that Ford was not a credible witness. As to Hamilton, the magistrate noted his felony conviction in 1971, which was within seven years of the hearing.

The magistrate also observed that the records of the state trial court reflected that an attorney had been appointed to represent Ford and that this attorney was present in court on March 8, 1954 when the court conducted proceedings in connection with the indictment to which Ford pled guilty. Only two matters were considered by the court on that date. One was the plea and sentencing of Ford and Hamilton. The other was the plea and sentencing of the other co-defendants in the case, two female companions who had waited in a car while Ford and Hamilton robbed a savings institution. The record reflected that the attorney who represented all the defendants argued a motion for probation on behalf of the two women. Though the record did not reflect that the attorney was also present when Ford changed his plea and was sentenced, a deputy court clerk who had attended the proceedings testified at the evidentiary hearing that it would be an

"extraordinary situation" where counsel was not present at arraignment and sentencing. The magistrate found that since only the two related matters were heard by the court on the day in question, "it is logical to assume that Mr. Halloran was present during all proceedings." The magistrate also referred to the fact that between the date of sentencing and the date of Ford's filing for federal habeas corpus relief, the trial judge, the prosecuting attorney and defense counsel of record all had died. In recommending that the application be denied the magistrate determined that Ford had not proved by a preponderance of the evidence that he was denied counsel at plea and sentencing.

Throughout the proceedings before the magistrate the respondent maintained that the application of Ford should be dismissed as a delayed petition pursuant to Rule 9(a) of the rules governing section 2254 proceedings. Rule 9(a) provides:

**Rule 9. Delayed or Successive Petitions**

**(a) Delayed petitions.** A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

Though the magistrate recommended denial of habeas corpus relief on the merits, the respondent filed an objection to the failure of the magistrate to dismiss under Rule 9(a). Petitioner filed six particularized objections to the magistrate's report.

The district judge filed a memorandum opinion in which he stated he had reviewed the record and had considered the particularized objections filed by petitioner's counsel. The district court found that the state had been prejudiced by petitioner's delay in seeking habeas corpus relief and the intervening death of the trial judge, the prosecutor and the defense attorney of record. The district court found that petitioner had failed at his evidentiary hearing to meet or rebut this apparent prejudice or to show that such prejudice would not have been avoided by an earlier effort on his part. The district court denied the writ of habeas corpus. The district court, contrary to the magistrate, found that Ford had established no valid excuse for his delay in seeking relief. In agreement with the magistrate, the district court also found that Ford had failed to establish a denial of his constitutional right to effective assistance of counsel, i.e., the presence of counsel at his change of plea and sentence.

On appeal the petitioner has mounted a broad attack on the district court procedure and its judgment. All of Ford's arguments overlook the one overriding consideration disclosed by this record: Ford's claim in these proceedings was inconsistent with his earlier sworn claims and his claims appeared to change in relation to the state's ability to produce contrary testimony. Though Ford asserted that he did not know of his right to counsel until he arrived at the federal prison in Atlanta in 1964, he waited until 1968 before raising the issue for the first time in state post-conviction proceedings. In those proceedings he admitted having counsel appointed but contended his lawyer coerced him to plead guilty. In his response to the first motion to vacate, the respondent revealed that the attorney who had been appointed to represent Ford in the 1954 proceedings had died. Ford's next motion sought to change the scenario completely by alleging that counsel had never been appointed and that Ford had pled guilty and been sentenced totally without the assistance of counsel. This was not only contrary to Ford's sworn statement in his first motion; it was contrary to the record of the trial court which showed the appointment of counsel. Finally, petitioner settled on his present claim— that counsel was not present when he pled guilty and was sentenced. The magistrate conducted an evidentiary hearing, but simply did not believe petitioner's claims with respect to the 1954 proceedings or his explanation for the delay in seeking relief by way of federal habeas corpus.

The magistrate was not required to believe petitioner and was justified in finding that he was not a credible witness. Ford's own contradictory sworn statements were sufficient to support this finding. Further, every fact concerning the appointment and presence of counsel was known by petitioner on the day of his plea and sentencing, March 8, 1954, and he admittedly knew of his right to counsel in 1968. Yet he waited an additional nine years before filing his application for a federal writ. By that time every witness who could have testified positively for the Commonwealth was dead. The one available witness who knew the procedures of the trial court testified that it would have been "extraordinary" for the court to have conducted an arraignment and sentencing in the absence of counsel. The court records revealed that the attorney who was appointed to represent Ford was present and argued a motion on behalf of Ford's female codefendants in the only other matter heard by the court that day. The magistrate concluded that the failure of the clerk (also now deceased) to record counsel's presence at Ford's appearance did not indicate his absence. It was a fair inference, from all that was recorded, that counsel was present when both of these related matters were taken up by the court.

This court recently dealt with a habeas corpus case where relief had been denied pursuant to Rule 9(a) of the rules governing section 2254 cases. In *Davis v. Adult Parole Authority*, 610 F.2d 410 (6th Cir. 1979), the district court summarily dismissed a habeas corpus petition which was filed 14 years after conviction of the petitioner on a guilty plea. The district court found that the claim of the petitioner was "stale" and that the respondent had been prejudiced because there was no recorded transcript of the plea proceedings and by the *presumed* unavailability of witnesses through loss of memory. This court reversed, holding that the petitioner was entitled to an "opportunity to meet or rebut the state's allegation of prejudice to its ability to respond, or to show that the prejudice was based on grounds which even an earlier petition would not have avoided . . . ." *Id.* at 414.

The court concluded that Rule 9(a) is based on the doctrine of laches and has a twofold effect on the procedural aspects of the habeas action. The delay increases "the petitioner's burden of proof in establishing a constitutional violation," *id.* at 415; and it creates "a presumption of prejudice to the state's ability to respond to the petition, and [shifts] to petitioner . . . the burden of rebutting the presumption." *Id.* at 416 (footnote omitted).

*Davis v. Adult Parole Authority* does not require reversal in the present case. *Davis* holds that delay increases a state prisoner's burden on the merits of his claim as well as creating a presumption of prejudice to the state. Here the district court held an evidentiary hearing at which Ford was given an opportunity to meet the burden which his delay placed upon him. However, he was not able to convince the finder of fact that he had been deprived of a constitutional right. It was not necessary to presume prejudice to the state. It was shown that the three persons most likely to have information with respect to Ford's claim were dead. The prejudice was real. Nothing at the hearing even remotely established that this prejudice would not have been avoided by more diligence on the part of Ford. The district court properly applied the rule of the *Davis* case in denying relief. See also, *Arnold v. Marshall*, 657 F.2d 83 (6th Cir. 1981).

Petitioner argues in this court that it was a denial of due process for the district court to decline to have Hamilton brought from Chicago to testify in person. The basis of this argument is that the "most crucial credibility determination" in the case related to Hamilton. We find no abuse of discretion, and no constitutional violation, in the requirement that Hamilton's testimony be taken by deposition. The motion for a supplemental hearing to receive the testimony of Hamilton came after the close of the evidentiary hearing at which Ford testified, some six months after the case was referred to the magistrate. The deposition of Hamilton was considered by the magistrate and the district court. Though he was

vague about some of the activities of himself and Ford, his self-styled "partner in crime," Hamilton insisted in his deposition that neither he nor Ford ever had an attorney in the 1954 proceedings. This statement was contrary to the official records of the trial court which reflected the appointment of counsel. It was also contrary to Ford's first claim that his appointed counsel had coerced him into pleading guilty, a claim about which Hamilton had apparently not been informed. When asked to explain the record entry this witness, whose criminal activities had covered a period of at least 18 years, responded that the court had probably made the entry "in order to cover up its own inadequacies." The most important credibility determination in this case related to the petitioner Ford. Observation of a witness's demeanor is not the sole, or necessarily the most critical, factor in making a credibility determination. The finder of fact may rely on one, several or all of the known facts. There was sufficient information in the deposition and the entire record to permit a credibility determination as to Hamilton.

Ford was accorded a meaningful hearing on his claim. He was unable to carry his burden of proving a constitutional violation. This was a proper case for dismissal pursuant to Rule 9(a) after the petitioner had been given an opportunity to establish his claim and to show lack of prejudice and had failed in both respects.

The judgment of the district court is affirmed.

---

1. In light of the lower court's disposition of this matter, the majority opinion should not be read to rule that delay provided an adequate ground to deny the petition.

Neither the magistrate nor the district judge relied upon Rule 9(a) of the rules governing section 2254 proceedings. When the magistrate originally recommended disposition under that rule, District Judge Siler rejected that recommendation and required an evidentiary hearing. After a hearing was held before the magistrate, the recommendation was considered and entered by District Judge Bertelsman. While Judge Bertelsman discussed Rule 9(a), his order adopted the magistrate's report *in toto.* Even were Judge Bertelsman inclined to

---

NATHANIEL R. JONES, Circuit Judge, dissenting.

While the magistrate's recommendation, accepted by the district court, resolved a question of fact with respect to appointment of counsel, a question remains as to whether petitioner Louis Ford was represented by counsel who was present at his plea and sentence. If counsel was not present at either of these critical stages in the prosecution, then petitioner's constitutional rights were violated.[1] *Kitchens v. Smith*, 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971); *Mempha v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); *Gideon v. Wainwright*, 372 U.S. 355, 83 S.Ct. 792, 9 L.Ed.2d 799 (1964). Because credibility is crucial to the determination of whether counsel was present, I would remand for additional testimony on that question.

Three witnesses, who were in court when petitioner originally pled guilty and was sentenced, were available to testify. The magistrate heard only two, refusing petitioner's request to produce the third. Under these circumstances, it is an abuse of discretion to not entertain the live testimony of the third witness.

The majority concludes that "the most important credibility determination related to the petitioner Ford." *Ante* at [873–874] I think it evident that it was not Ford's reputation for truth telling or even his demeanor that was crucial. The issue was whether the story that he told as to the presence of counsel was true or not. Of course, even

rely upon the rule, the familiar doctrine of law of the case would have counseled against such reliance. *See United States v. United States Smelting, Refining & Mining Co.*, 339 U.S. 186, 198, 70 S.Ct. 537, 544, 94 L.Ed. 750 (1950); *Greyhound Computer Corp., Inc. v. International Bus. Machs. Corp.*, 559 F.2d 488, 507–08 (9th Cir. 1977), *cert. denied*, 434 U.S. 1040, 98 S.Ct. 782, 54 L.Ed.2d 790 (1978); *White v. Murtha*, 377 F.2d 428, 431–32 (5th Cir. 1967).

The majority properly holds that unexcused delay may affect petitioner's credibility and increase his burden. *See Davis v. Adult Parole Authority*, 610 F.2d 410, 415 (6th Cir. 1979). It resolves the case on credibility grounds, not upon Rule 9(a).

those whose credibility is poor and demeanor untrustworthy still may be telling the truth about an incident. No other evidence was so strong as to foreclose Ford's claim. And that is why the testimony of Hamilton is important.

Hamilton was not proffered as a witness until after the conclusion of the magistrate's evidentiary hearing. The district court's denial of Ford's request to reopen the hearing for the testimony of Hamilton rests upon its perceived inability to exercise subpoena power over Hamilton since he resided more than one hundred miles away from the courthouse. No other reason for the refusal appears in the record. However, it appears from the record that compulsory process was neither requested nor necessary. Ford offered to produce Hamilton. When both attorneys traveled to Hamilton's domicile, he gave his deposition voluntarily. The perceived absence of subpoena power is an insufficient reason to deny Ford the opportunity to present his testimony.[2]

Upon examination of the cold record of Hamilton's deposition, the magistrate rejected his story. The only stated reason is a 1971 conviction for interstate transportation of forged securities.

The majority focuses upon Hamilton's conjecture that the court records may have been altered,[3] and his statement that he and Ford were "partners in crime."[4] However, Hamilton's recollection from personal knowledge of the events following his arrest in 1953 seems both sharp and clear. While Hamilton's testimony corroborates the relevant facts testified to by Ford, Hamilton remembered certain details not mentioned by Ford.[5] Hamilton discussed the crime, the involvement of the two female codefendants, the pretrial detention, plea bargaining proceedings and the appearance of Ford and he before the court. Hamilton forthrightly admitted prior convictions and noted that he had no outstanding court-imposed obligations as to any of them.

On review of the written transcript of his deposition, the magistrate found that the 1971 conviction "touched on his credibility." Hamilton's testimony was rejected without the factfinder allowing his live testimony, and without any sign of further evaluation by the factfinder beyond the recitation of the aged felony conviction. Yet the convic-

---

2. Ford argues that the 100-mile limit of Fed.R. Civ.P. 45 is inapplicable in habeas corpus cases. In light of the irrelevance of compulsory process in the present case, this claim need not be addressed.

3. Hamilton's deposition question and answer was:

> Q. Can you explain that record entry appointing Halloran in those court records?
> A. I don't know—I could possibly. The court, in order to cover up its own inadequacies, might have put his name there. But I never met him.

Deposition at 29, Supplemental Appendix at 135.

The purely speculative nature of his comment was confirmed a short time later when the commonwealth attorney asked a similar question:

> Q. Do you know whether the records in the Kentucky Court, Campbell Circuit Court, state that Mr. Halloran was to represent—appointed to represent Gwendolyn and Evie?
> A. I don't know that, sir. I really don't. I don't know anything of what happens in the courts. I just know that I was glad to get off

with my life, because I know I had done wrong.

Deposition at 32, Supplemental Appendix at 138.

4. Hamilton's remark referred to the fact that Ford and he were not friends. He said:

> A. In 1953 we went to Kentucky together. We went to prison together. And that was the extent of our association. I mean, but as friendship we can't say we were friends. We were partners in crime okay, but not friends, okay. I know what friends are. I have some now.

Deposition at 18, Supplemental Appendix at 124.

He had earlier testified that he had not seen Ford in 25 years. Deposition at 16, Supplemental Appendix at 122. He and Ford did not socialize while in prison. Deposition at 20, Supplemental Appendix at 126.

5. For example, both Hamilton and Ford identified an attorney who came to their jail cell to discuss representation for a fee. Hamilton recalled that he was recommended by a jailer. Deposition at 21, Supplemental Appendix at 127.

tion was followed by years of law-abiding, even exemplary conduct.[6] Plainly, the conviction does not render Hamilton's testimony inherently unbelievable.

The majority concludes that the cold record presented "sufficient information ... to permit [an adverse] credibility determination as to Hamilton." *Ante* at [873–874]. My review indicates that if any credibility inference is to be drawn from the deposition transcript it is to the contrary of that drawn by the majority's selective and unrepresentative sampling. Moreover, the majority appears to endorse the view that a lower court may find facts adverse to a habeas corpus petitioner's claim by rejecting, on credibility grounds, the sworn testimony of a witness without viewing the witness as he testifies. This view is out of step with Supreme Court guidance on the question.

The Supreme Court has often admonished the judiciary as to its responsibility to resolve factual disputes presented by habeas corpus petitions alleging unconstitutional confinement:

There is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law. This Court has insistently said that the power of the federal courts to conduct inquiry in habeas corpus is equal to the responsibility which the writ involves: "The language of Congress, the history of the writ, the decisions of this Court, all make clear that the power of inquiry on federal habeas corpus is plenary." *Townsend v. Sain,* [372 U.S. 293 [83 S.Ct. 745, 9 L.Ed.2d 770] (1963)] at 312, 83 S.Ct. at 756.

*Harris v. Nelson,* 394 U.S. 286, 292, 89 S.Ct. 1082, 1086, 22 L.Ed.2d 281 (1968).

Recently, in *United States v. Raddatz,* the Supreme Court noted the difficulties encountered by a district court when it reviews the written record developed before a magistrate who has heard the testimony of the witnesses:

To be sure, courts must always be sensitive to the problems of making credibility determinations on the cold record. More than 100 years ago, Lord Coleridge stated the view of the Privy Council that a retrial should not be conducted by reading the notes of the witnesses' prior testimony:

The most careful note must often fail to convey the evidence fully in some of its most important elements .... It cannot give the look or manner of the witness: his hesitation, his doubts, his variations of language, his confidence or precipitancy, his calmness or consideration; ... the dead body of the evidence, without its spirit; which is supplied, when given openly and orally, by the ear and eye of those who receive it." *Queen v. Bertrand,* 4 Moo. P.C. N.S. 460, 481, 16 Eng.Rep. 391, 399 (1867).

447 U.S. 667, 679, 100 S.Ct. 2406, 2414, 65 L.Ed.2d 424 (1980).

When credibility is important, evaluation of the witness *on the stand* by a factfinder is very often necessary before a decision may be made. When the evidence does not so clearly preponderate against the petitioner that additional evidence by the proffered witness could not turn the tide, the petitioner has not received the "careful consideration and plenary processing of [his claim] including full opportunity for presentation of the relevant facts," to which he is entitled. *Blackledge v. Allison,* 431 U.S. 63, 82–83, 97 S.Ct. 1621, 1633–34, 52 L.Ed.2d 136 (1977), *quoting Harris v. Nelson,* 394 U.S. at 298, 89 S.Ct. at 1090.

In the case at bar, other evidence did not so clearly preponderate against Ford as to render Hamilton's credibility unimportant

---

**6.** Beyond a full-time job, Hamilton regularly was involved in church participation and other eleemosynary activities, including volunteer work in an attempt to deter incarcerated individuals from a life of crime. Deposition at 37–40, Supplemental Appendix at 143–46.

to the magistrate's determination. Consequently, the magistrate's refusal to hear Hamilton's testimony on the stand in these circumstances abuses his discretion and affords the petitioner less than the full hearing to which he was entitled. Finding that a remand is required, I must dissent.