Nealy J. **BUCHANON**, Petitioner-Appellant, Cross-Appellee,

v.

Barry **MINTZES**, Warden Southern Michigan State Prison, Respondent-Appellee, Cross-Appellant.

Nos. 83–1252, 83–1253.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 26, 1984.
Decided May 9, 1984.
Rehearing En Banc Denied July 3, 1984.

Frank D. Eaman, Detroit, Mich. (court-appointed), for petitioner-appellant, cross-appellee.

Frank J. Kelley, Atty. Gen. of Michigan, Eric J. Eggan, Asst. Atty. Gen. (argued), Lansing, Mich., for respondent-appellee, cross-appellant.

Before CONTIE and WELLFORD, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

WELLFORD, Circuit Judge.

Petitioner, Buchanon, who is serving a life sentence in the Jackson, Michigan State Prison for committing the murders of a husband and wife in rural Michigan in 1955, filed a habeas corpus petition for his discharge from prison under 28 U.S.C. § 2254 in the Eastern District of Michigan in 1979. His contentions that constitutional errors occurred in respect to his confession to the brutal killings and to his guilty plea, and to hearings in respect of his sentence to life imprisonment by the Michigan State Judge have been presented to a number of courts after his incarceration in 1956. His case is a kind of microcosm of the pro se actions taken by prisoners incarcerated for serious crimes in state prisons who present frequent challenges to the basis of their convictions and sentences, and the responses made by trial and appellate courts, state and federal, to these post-conviction efforts.

The battered bodies of an elderly farm couple in Ingham County, Michigan, were found by police concealed under hay bundles in their barn in September, 1955. The police had been alerted by the couple's son and daughter, who were concerned about their unexplained absence. They had been beaten about the face and head by a blunt object or objects. Warrants were issued for petitioner, a convicted felon, who had recently escaped from a nearby state prison. Buchanon was located and arrested in Baltimore in October, 1956. According to petitioner's affidavit submitted in this cause, he was questioned by law enforcement people at the Baltimore jail about the murders, and beaten on his body by a blackjack before being forced to sign extradition papers and make a statement admitting his guilt. His affidavit further sets out that shortly thereafter, the local Michigan Sheriff took him into custody and flew him to the Stockbridge, Michigan jail. He claims that he was also mistreated there by white law enforcement officials because of his race, felt threatened by a crowd of people about the jail, and was coerced into making a full confession at the Ingham County Jail before a court reporter and other officials. Buchanon also claims that the judge before whom he pled guilty during *en camera* proceedings referred to him as a "nigger" and warned him that he "had better go along with the program." At the hearing before the district court, the state judge, now retired, indignantly denied Buchanon's claims in these respects, although he had no clear recollection after some twenty-five years of the details of the hearing and proceedings before him.

The habeas corpus petition was filed approximately twenty-three years (October 1979) after Buchanon admitted his guilt and was sentenced for the dual murders. Among its other assertions were:

1) "petitioner is presently unconstitutionally detained"

2) "petitioner has exhausted all available State remedies"

3) "no previous application to this court" (Eastern District of Michigan) "has been made"

The petition also recited that petitioner had filed an application for delayed appeal in 1968 in the Michigan Court of Appeals, and one in the Michigan Supreme Court that same year, both of which were denied; that he had filed a similar application unsuccessfully in the State Court of Appeals in 1973; and had filed a delayed application for remand to the state trial court, which had been denied in 1977 by the State Court of Appeals; and again in 1978 by the Michigan Supreme Court. In its brief, the Michigan Attorney General asserts that petitioner also unsuccessfully sought a writ of certiorari to the United States Supreme Court in 1969 (see 395 U.S. 929), and a rehearing before that Court, which denied the application in 396 U.S. 871 (1969). The brief also points out that petitioner moved to withdraw his guilty plea in the Ingham County Circuit Court in 1971, and that this motion was denied; he filed a like delayed motion in 1973 which was again denied at the state trial and appellate level. Thus it appears that Buchanon filed, or was assisted in pursuing at least ten post-conviction efforts from 1968 through 1978 from the state trial court level to the United States Supreme Court prior to his filing the instant petition. Presumably, all of these courts considered, at least to some extent, and then denied the complaints which have now come before this court on appeal. The essence of the complaints are that he was forced into making his confession,[1] and that he did not knowingly, voluntarily, and intelligently waive the right to assistance of counsel prior to submitting a guilty plea, in respect to a degree hearing, or at sen-

tencing pursuant to the acceptance of the guilty plea, and that he was not present at the degree hearing.

The State asserts as defense to the claims of the petition for habeas corpus Rule 9(a) of 28 U.S.C. § 2254.[2] It also asserts that Buchanon made a knowing, intelligent and voluntary waiver of the assistance of counsel at all material stages of his court appearances, and that he was present at the degree hearing.

## I. Is Petitioner Barred by his Long Delay?

The Advisory Committee Note to Rule 9(a) was prescient in 1976 when it stated:

The assertion of stale claims is a problem which is not likely to decrease in frequency. . . . The grounds most often troublesome to the courts are . . . plea of guilty unlawfully induced, use of a coerced confession . . . When they are asserted after the passage of many years, both the attorney for the defendant and the state have difficulty in ascertaining what the facts are.

28 U.S.C. foll. § 2254, Rule 9, Advisory Committee Note p. 1137.

The Advisory Committee Note cites a Supreme Court reference to the problems faced in cases where defendants challenged their guilty pleas, based upon alleged forced confessions.

What is at stake in this phase of the case is not the integrity of the state convictions obtained on guilty pleas, *but whether, years later*, defendants must be permitted to withdraw their pleas, which were perfectly valid when made, and be given another choice between admitting their guilt and putting the State to its proof. (emphasis added).

---

**1.** One confession statement sets out the details of the killings, many of which had been corroborated, and of the theft of personal property from the victims and the subsequent flight, all following his prison escape.

**2.** Rule 9(a) of 28 U.S.C. § 2254 states:
(a) *Delayed petitions.* A petition may be dismissed if it appears that the state of which the

respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

*McMann v. Richardson,* 397 U.S. 759, 773, 90 S.Ct. 1441, 1450, 25 L.Ed.2d 763 (1970).

In *McMann,* the Supreme Court refused to give cognizance to three claims of this nature, the oldest of which was fourteen years old, and reversed the court of appeals which had granted the writs. It should be acknowledged, however, that *McMann* involved defendants who had counsel when they submitted guilty pleas, even though they claimed later a coerced confession was the basis thereof. In *Herman v. Claudy,* 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126 (1956), on the other hand, the court set aside an uncounselled state guilty plea even though the defendant had waited eight years to make a post-conviction challenge. The Court made reference to a case where a state prisoner successfully challenged validity of his conviction eighteen years after conviction.[3]

This court has read Rule 9(a) as invoking the equitable doctrine of laches, as has the Advisory Committee to Rule 9(a). Thus, in *Davis v. Adult Parole Authority,* 610 F.2d 410, 414 (6th Cir.1979), a two prong test was developed:

> First, the state must appear to have been prejudiced in its ability to respond to petitioner's claims. Second, the petitioner must be given the opportunity to meet or rebut the apparent prejudice to the state, or to show that whatever prejudice the state has suffered would not have been avoided had the petition been filed earlier.

This court has considered three habeas corpus petitions challenging state convictions after many years of delay. Most recently, in *Ford v. Supt., Kentucky State Penitentiary,* 687 F.2d 870 (6th Cir.1982), it affirmed denial of habeas corpus relief to a prisoner who filed his first state court action fourteen years after submitting a guilty plea. It was not until twenty-three years after the state court sentence had been imposed that he filed his petition for release and relief in federal court on the grounds that he was denied the "presence of counsel at the time of plea and sentence." *Ford* at 871. As in the instant matter, the prisoner's petition was referred to a magistrate for a hearing, who recommended denial of the writ. The records of the state trial court reflected that an attorney had been appointed to represent Ford and was present in court on the day that he pled guilty. *Ford* at 871. Testimony at the hearing tended to cast doubt as to whether that attorney actually was present at the taking of the plea and the imposition of sentence. The magistrate based his recommendation to deny the writ on the merits, but the district court ruled adversely to Ford apparently based on Rule 9(a) delay grounds as well as on the merits. *Ford* at 872. Judge Lively, for the majority, ruled, at 874:

> Ford was accorded a meaningful hearing on his claim. He was unable to carry his burden of proving a constitutional violation. *This was a proper case for dismissal pursuant to Rule 9(a) after the petitioner had been given an opportunity to establish his claim and to show lack of prejudice and had failed in both respects.* (emphasis added)

This court, then, ruled that the writ was properly denied on both the merits, and the Rule 9(a) basis that Ford failed to show a lack of prejudice to the state.[4]

---

3. *Palmer v. Ashe,* 342 U.S. 134, 72 S.Ct. 191, 96 L.Ed. 154 (1951).

4. Judge Jones, in dissent, however, asserted:
"the majority opinion should not be read to rule that delay provided an adequate ground to deny the petition.
Neither the magistrate nor the district judge, relied upon Rule 9(a) of the rules governing section 2254 proceedings. When the magistrate originally recommended disposition under that rule, District Judge Siler rejected that recommendation and required an evidentiary

hearing. After a hearing was held before the magistrate, the recommendation was considered and entered by District Judge Bertelsman. While Judge Bertelsman discussed Rule 9(a), his order adopted the magistrate's report *in toto.* Even were Judge Bertelsman inclined to rely upon the rule, the familiar doctrine of law of the case would have counseled against such reliance.
The majority properly holds that unexcused delay may affect petitioner's credibility and increase his burden. *See Davis v. Adult Parole Authority,* 610 F.2d 410, 415 (6th Cir.

In an earlier case, however, *Phillips v. Black*, 367 F.Supp. 774 (E.D.Ky.1973) *aff'd. without opinion*, 497 F.2d 924 (6th Cir. 1974), there was a prisoner challenge to a guilty plea and sentence on the grounds that there had been no attorney present at sentencing in 1955. A writ of habeas corpus was granted because the record did not indicate the presence at sentencing of the attorney who had represented the petitioner in the prior course of proceedings. (The attorney, after a sixteen year delay, could not recall whether or not he had been present). *See also, Oliver v. Cowan*, 487 F.2d 895 (6th Cir.1973) where absence of counsel at the time of sentencing was determined to be grounds for habeas corpus relief. (The sentencing by a jury occurred in 1959; habeas corpus relief was granted by the district court in and affirmed by this circuit in 1973).

The other recent case in this court dealing with a prisoner's long delay in seeking habeas corpus relief is *Arnold v. Marshall*, 657 F.2d 83 (6th Cir.1981). Arnold was convicted in Ohio in 1953, never appealed, and was released prior to a 1973 indictment for being an habitual offender, on which he was convicted and sentenced to a life term in 1975. One of the four predicate convictions on which the habitual offender charge was based was the 1953 jury conviction. This became the subject matter of the 28 U.S.C. § 2254 action in 1980 (twenty-seven years after the unappealed conviction), based on his not being advised of his right to appeal. The magistrate in *Arnold* recommended that the writ be denied because key witnesses were missing or dead, no transcript was prepared, and trial notes could not be located. This court affirmed the dismissal, based on Rule 9(a).

In view of the foregoing, this Court concludes that the twenty seven year delay has prejudiced respondent's ability to respond in a meaningful way to petitioner's claims.

Our Rule 9(a) analysis, however, does not end here. Delay is excused if petitioner can show that his petition is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

No such showing has been made. in this case.

657 F.2d at 84–85.

The decision to deny the writ was based on the conclusion that there was no dispute as to the underlying facts, and the "petitioner pled no facts which would serve to rebut the obvious prejudice to the State from the twenty-seven years of delay." *Arnold*, at 85. (*Davis v. Adult Parole Authority, supra,* was the only case cited in *Arnold*.)

It was stipulated that none of the prosecutors involved in this case, in 1955–56, had any independent recollection of the events surrounding Buchanon's arrest, statements or plea. The trial judge, retired for seven years, testified that the in-chambers conference with petitioner incident to taking the plea was commonplace, the purpose being to talk to him away from the victim's family, the prosecutors and spectators "to see if anyone had abused him in any way or taken advantage in any way ... [in order to coerce him] to plead guilty to the offense." He denied using any racial epithet or threatening Buchanon in any fashion during the private conference, but he could not recall if petitioner mentioned anything about police threats or coercion. The judge also testified that at the time it was not unusual for any defendant, black or white, even in a murder case, to appear without an attorney, and that he was not aware that any large crowd had gathered around the jail in Stockbridge while petitioner was there.

Based on these facts, and Buchanon's testimony at the hearing, the magistrate recommended on the merits of his claim that the writ be denied, holding:

The record, and indeed, Petitioner's own testimony in this case, make it clear

1979). It resolves the case on credibility grounds, not upon Rule 9(a).

687 F.2d at 874 n. 1 (citations omitted).

that Petitioner knew he had a right to an appointed attorney but that he declined to ask for one because he simply did not think one would do him any good (Tr. 30, 34, 55), and because he considered himself guilty of the murders (Tr. 40). The undersigned finds as a matter of fact that his decision to waive counsel was made understandingly and intelligently.

Joint App. 35 (footnotes omitted).

The magistrate distinguished *Moore v. Michigan*, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957), principally relied upon by petitioner, wherein a 1938 state conviction was set aside. *Moore* involved a seventeen year old black defendant with a seventh grade education who also pled guilty to murder of an elderly white victim without benefit of counsel and, again without counsel, was sentenced to life imprisonment. He was questioned in jail without an attorney for approximately 28 hours over two days and nights before orally confessing, and did not request an attorney, although advised that he might have one, at the taking of the guilty plea. Like Buchanon, Moore did not participate in the degree hearing. The trial judge's findings after an in-chambers meeting with Moore included the comment that Moore insisted something was wrong with his head and that he had experienced queer sensations. Also, the Sheriff conceded that he told Moore while he was in jail before the confession that there might be "trouble" and he could not guarantee that he could protect him in that event. In a five to four decision, the court reversed, ordering a new trial in an appeal from the Supreme Court of Michigan after a hearing on the twelve year delayed motion for a new trial, because petitioner had satisfied his burden of demonstrating that he had not understandingly and intelligently waived counsel at critical stages.

In the instant case, Judge DeMascio considered each claim made by Buchanon and the magistrate's recommendation denying each of these claims. He sustained the magistrate on the evidence submitted at the hearing in finding that Buchanon's guilty plea was voluntarily and understandingly made, and not improperly induced by coercion or threats. He found the magistrate's conclusion appropriate that petitioner's allegations of a mob outside the Michigan jail inducing or coercing his giving of a confession were not well founded. He found that although the transcript of the preliminary examination of the petitioner had been lost as had the prosecutor's file and all files pertaining to the first round of appeals in 1966, that transcripts of the taking of the plea and of the sentencing were available as was the testimony of the state trial judge who accepted the plea, and determined that first degree murder was the correct charge. Sufficient facts and record were adduced for the district judge to find, as had the magistrate, that the Michigan trial judge had properly and carefully conducted the proceedings during the submission of the guilty plea, including an *in camera* hearing to ensure that petitioner was acting independently, knowingly, and not under compulsion, and that he had also voluntarily and understandingly waived his right to counsel at the time of the guilty plea, distinguishing the factual circumstances from those in *Moore v. Michigan, supra.*

The district judge, however, differed with the magistrate's conclusion that there was also an effectual and valid waiver of the right to counsel at the degree hearing and the sentencing that followed.

Judge DeMascio concluded that because petitioner "presented no evidence that would tend to support his claim that he was not present at the degree hearing," and admitted that he himself "cannot recall whether he was present," that his claim in that respect must fail. He stated as an additional basis for his conclusion, citing *Arnold v. Marshall, supra,* that under Rule 9(a) petitioner had not "met his burden of showing why he could not have raised his claim at a time when there would have been witnesses with an independent recollection of whether he was present at the degree hearing." He also sustained the magistrate's finding that coercion did

not taint the guilty plea with respect to the alleged police beating in Baltimore. As to whether petitioner's confession was coerced, Judge DeMascio also ruled that this issue "comes within the purview of Rule 9(a)." He concluded alternatively, that Rule 9(a) was dispositive as to the claim challenging the voluntariness of the guilty plea.

The trial judge decided, contrary to the magistrate's recommendation, that merely because Buchanon had freely, knowingly and intelligently waived a right to counsel at the submission of his guilty plea, it did not follow that he similarly waived the right to assistance of counsel at the later critical stage, the degree hearing and sentencing, citing *Hamilton v. Alabama,* 368 U.S. 52, 54, 82 S.Ct. 157, 158, 7 L.Ed.2d 114 (1961) (constitutional right in capital case to counsel at arraignment), *White v. Maryland,* 373 U.S. 59, 60, 83 S.Ct. 1050, 1051, 10 L.Ed.2d 193 (1963) (constitutional right to counsel in capital case at preliminary hearing), and *Moore v. Michigan, supra.* He concluded further that "waiver of the right to counsel may not be implied from such a silent record," where petitioner said nothing, there was no cross-examination, and he "presented no evidence in his behalf." *See, Carnley v. Cochran,* 369 U.S. 506, 515–16, 82 S.Ct. 884, 889–10, 8 L.Ed.2d 70 (1962) (constitutional right to counsel unless waived in state felony case), and *Boykin v. Alabama,* 395 U.S. 238, 242–43, 89 S.Ct. 1709, 1711–12, 23 L.Ed.2d 274 (1969) (guilty plea must be shown to be intelligent and voluntary). The district judge granted the writ on this sole issue, "or alternatively [the state may] amend petitioner's judgment of conviction to murder in the second degree." The state appeals from the granting of any relief, including the above alternative. Petitioner appeals on the basis that there was no knowing or voluntary guilty plea and no waiver of right to counsel at any stage.

■ We agree with the district court that the Rule 9(a) tests set out in *Davis* have been met on the issues pertaining to the allegedly coerced confession, the circumstances of the guilty plea, and with respect to the alleged absence of Buchanon from the degree hearing. The state clearly has been prejudiced by the passage of some 25 years from the time of petitioner's guilty plea and sentencing to the time of the hearing on this habeas corpus writ. *See Arnold v. Marshall, supra; Ford v. Supt., supra.* While given an opportunity to rebut this prejudice caused by long delay under the doctrine of laches, including the loss of memory, potential witnesses and records, petitioner has not shown that this prejudice would not have been avoided if he had proceeded earlier on these essentially fact claims relating to circumstances surrounding the confession,[5] and as to whether he was physically present during the degree hearing. We further conclude that the same Rule 9(a) principles would apply to all the guilty plea claims which are closely intertwined with the alleged coerced confessions. This lengthy delay in presenting a federal claim after submission of a guilty plea clearly places a very heavy burden on a claimant to rebut the inherent prejudice involved. *See Arnold* and *Ford.* We agree, furthermore, with the magistrate and the district judge that on the merits of the claims on these issues, coercion while in the Michigan jail, presence at a hearing, and the circumstances surrounding the guilty plea, petitioner cannot prevail. The Michigan confession was taken before a court reporter, and the petitioner indicated (1) that he was *"freely* and *voluntarily"* confessing; (2) that he understood the authorities could not force him to make any statement; (3) that it could be used against him; (4) that he was subject to no physical force; and, (5) that *no* promises were made to him in exchange for his statement. He then recounted the details of his escape from Jackson prison and the ensuing murders. At the guilty plea hearing, Buchanon, who had been involved in felony proceedings before, was advised that he could have a lawyer, regardless of his financial ability, and a jury trial, if he wished. He

---

5. Petitioner does not now deny that he killed both victims in 1955.

was asked if any one made any promises to him to induce the guilty plea. He affirmed that he was pleading guilty because he was guilty. Based on his unequivocal responses, and a conference in chambers, the court concluded:

> THE COURT: Let the record show that the court has conferred with the accused relative to the circumstances in each one of these crimes, is convinced that he committed the crimes, and that his plea was freely, understandingly and voluntarily made, without undue influence, compulsion or duress and without promise of leniency. Therefore his pleas are accepted and he is remanded to the custody of the county sheriff to await the taking of testimony of witnesses to determine the degree of the crime, and for sentence.

As to the claimed coercion in Baltimore, that issue was precluded by the long and unexplained delay in asserting the claim where, as determined by the district judge, making an adequate defense was "entirely dependent upon witnesses who have no recollection of the facts." Buchanon failed to meet or rebut the prejudice which resulted from the passage of many years in this regard. We find the district judge was also correct for the reasons stated in his disposition of the claim on the waiver of counsel at the guilty plea based on the evidence.

■ The last issue is whether the district judge was correct in holding that neither on the merits, after the hearing, nor on the basis of Rule 9(a) was petitioner precluded from obtaining relief on the claim that he did not understandingly and intelligently waive the assistance of counsel at the degree hearing and the sentencing which followed immediately. There is, first of all, no question but that this hearing on the determination of the degree of guilt was a critical stage and bore directly on the punishment and/or disposition which was to be made by the state court after acceptance of the guilty plea. The right to counsel was a matter of "supreme importance" at this

stage of the proceeding. *Moore* at 164, 78 S.Ct. at 196. We recognize also that:

> ... 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that 'we do not presume acquiesce in the loss of fundamental rights.'
>
> ....
>
> the constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court .... this protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.

*Johnson v. Zerbst,* 304 U.S. 458, 464–5, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1937), *quoted in Carnley, supra,* at 514–5, 82 S.Ct. at 889–10. *See also Rice v. Olson,* 324 U.S. 786, 788–791, 65 S.Ct. 989, 990–991, 89 L.Ed. 1367 (1945).

> Even when a right so fundamental as that to counsel at trial is involved the question of waiver must be determined on 'the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.'

*North Carolina v. Butler,* 441 U.S. 369, 374–5, 99 S.Ct. 1755, 1757–8, 60 L.Ed.2d 286 (1979), (quoting *Johnson v. Zerbst,* 304 U.S. at 464, 58 S.Ct. at 1023). *See, Oliver v. Cowan, supra.*

Since the record is silent as to whether the trial court advised petitioner *at the degree hearing and at sentencing* that he was entitled to the assistance of counsel at this critical stage, and since we cannot presume a waiver by mere silence (absent other corroborated proof of a waiver), we affirm the trial judge in his holding that a writ of habeas corpus should issue unless within a reasonable time the state conducts another degree hearing and resentencing with the opportunity for petitioner to have counsel to assist him. There is a sufficient record of these proceedings to indicate that the state has not been prejudiced in its ability to respond to petitioner's claims in this respect of the case only. There is

nothing in the transcript of the degree hearing or the sentencing that indicates any mention of right to counsel or any knowing waiver of this right at these stages.

We emphasize also that at the degree hearing, if any is held, Buchanon's confession may be utilized as well as the exhibits introduced at the prior hearing.

We reverse, however, the alternative ordered by the trial judge that the judgment of conviction be amended to that of murder in the second degree in lieu of the opportunity for a degree hearing and resentencing. We find no authority for this action of the trial judge.

CONTIE, Circuit Judge, concurring.

■ I join that portion of Judge Wellford's opinion which holds that Rule 9(a) of the rules for habeas corpus proceedings does not bar consideration of the merits of Buchanon's claim that he did not waive his right to counsel at the degree and sentencing hearing and that portion which holds that Buchanon is entitled to relief on the merits of this claim. I also join that portion of Judge Wellford's opinion which holds that Buchanon's claims that his confession was coerced and that he was not present at the degree and sentencing hearing are barred by Rule 9(a). I disagree, however, with Judge Wellford's application of Rule 9(a) to Buchanon's other claims. Accordingly, I write separately.

Judge Wellford states, in discussing the issue of Buchanon's waiver of his right to counsel at the degree and sentencing hearing, that "[t]here is a sufficient record of these proceedings to indicate that the state has not been prejudiced in its ability to respond to petitioner's claims *in this respect of the case only.*" (Emphasis added.) I do not believe that Rule 9(a) sweeps so broadly. Although I agree that Buchanon is not entitled to relief on the other grounds he presents, I reach this result by considering the merits of Buchanon's

claimed lack of a knowing and voluntary waiver of his right to counsel at the time he entered his plea and lack of a knowing and voluntary entry of his guilty plea.

Buchanon argues that the state trial judge failed in his duty to examine closely Buchanon's waiver of the right to counsel at the time he pleaded and to take steps to assure that the waiver was a knowing one. Specifically, he relies upon *Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), which states that a constitutionally valid waiver of the right to counsel,

must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

*Id.* at 724, 68 S.Ct. at 323. Buchanon makes a similar, albeit less clearly articulated, claim that he did not act knowingly in entering his guilty plea. *See Moore v. Michigan,* 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957). *Cf. Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).[1] Buchanon also claims that the waiver of his right to counsel was not voluntary due to a coercive atmosphere. This coercive atmosphere, Buchanon argues, also made his plea involuntary. The district court ruled against Buchanon on the merits of these four issues. Buchanon's claim that his confession was coerced and that he was not present at the degree and sentencing hearing were rejected by the district court on the basis of Rule 9(a), although the district court indicated that it would also rule against Buchanon on the merits of these two claims. Finally, the

---

**1.** This circuit has repeatedly held that *Boykin* does not apply retroactively. *See, e.g., Hendron v. Cowan,* 532 F.2d 1081, 1083 (6th Cir.1976).

This claim, accordingly, must be evaluated under pre-*Boykin* standards.

district court found that Rule 9(a) did not bar consideration of Buchanon's claim that he did not waive counsel at the degree and sentencing hearing and that Buchanon is entitled to relief on this claim.

It should be clear beyond doubt that a respondent relying on Rule 9(a) must show prejudice and that prejudice cannot be presumed from the mere passage of time. *See Moore v. Smith*, 694 F.2d 115, 117 (6th Cir.1982), *cert. denied*, 460 U.S. 1044, 103 S.Ct. 1442, 75 L.Ed.2d 798 (1983). Clear though these propositions may be, a temptation exists to find prejudice in the absence of any specific indication of lost evidence or failed memories. Allowing petitions of this age to be considered on the merits may be impolitic, but Congress has clearly determined that, absent demonstrable prejudice, such petitions are to be heard. In our judicial role, we must act consistently with Congress' determination.

As originally drafted, Rule 9(a) established a rebuttable presumption of prejudice if a petition was filed more than five years after the conviction. *See* H.R.Rep. No. 94–1471, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Ad. News, 2478, 2481. Although this presumption was intended only to place a burden on the petitioner of going forward with evidence to meet or rebut the presumption, *see* Advisory Committee Note, *reprinted in* 28 U.S.C.A. foll. § 2254 at 1137, 1138, Congress thought that even such a mild shifting of burdens was "unsound policy" and that the deletion of the presumption of prejudice was necessary to bring Rule 9(a) "into conformity with other provisions of law." H.R.Rep. 94–1471 at 5, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 2481.

Rule 9(a), therefore, is not a strict statute of limitations, but instead incorporates the doctrine of laches into § 2254 proceedings. *See Davis v. Adult Parole Authority*, 610 F.2d 410, 414 (6th Cir.1979).

It is apparent that a resolution of Buchanon's claims of a lack of knowledge in waiving counsel and pleading guilty depend only upon the discussions contained on the record and upon the in-chambers conference between Buchanon and the trial judge.[2] The transcript of the plea entry and waiver of counsel have been preserved. The trial judge was able to recall and testify as to the substance of the in-chambers discussion. Nothing more is needed to disprove Buchanon's claim of a lack of knowledge in waiving counsel and entering his plea. The state, therefore, has failed to show any prejudice to its ability to respond to these two claims. Thus, Rule 9(a) does not bar their consideration.

Buchanon's claims of coercion, i.e. that his waiver of counsel at the arraignment and the entry of his plea were involuntary, are more troublesome under Rule 9(a). The district court ruled against Buchanon on the merits of these claims, implicitly finding that Rule 9(a) did not apply to them. Although I might reach a different conclusion upon de novo consideration,[3] the matter is of little moment because the district court did not grant relief on these two grounds. The district court's finding that Buchanon acted voluntarily is not clearly erroneous.

Finally, I agree with Judge Wellford and the district court that Rule 9(a) bars consideration of Buchanon's claims that his con-

---

**2.** In *Roddy v. Black*, 516 F.2d 1380, 1384 n. 5 (6th Cir.), *cert. denied*, 423 U.S. 917, 96 S.Ct. 226, 46 L.Ed.2d 147 (1975), we held that the knowing and voluntary nature of a guilty plea may be established by the testimony of the trial judge when off-the-record discussions occurred in the state proceedings. This rule should also apply in the context of determining whether a waiver of the right to counsel was knowing.

**3.** Although the determination of the underlying factual question of the presence or absence of prejudice is subject to the clearly erroneous

standard, the ultimate question of whether a delayed petition is to be dismissed is subject to review only for abuse of discretion. *See Berry v. Mintzes*, 726 F.2d 1142 at 1146 (6th Cir.1984). *See also* Advisory Committee Note, *reprinted in* 28 U.S.C.A. foll. § 2254 at 1137:

Also, the language of the subdivision, "a petition *may* be dismissed," is permissive rather than mandatory. This clearly allows the court which is considering the petition to use discretion in assessing the equities of the particular situation.

284

fession was coerced and that he was not present at his degree and sentencing hearing. The state made a showing of prejudice as to both of these claims. It was stipulated that the prosecutors involved in the case had no independent recollection of Buchanon's statement and the trial judge testified that he could not remember whether or not Buchanon was present at the degree hearing. Buchanon has not rebutted this showing of prejudice.

To summarize, the state made no showing that it was prejudiced in its ability to respond to Buchanon's claims that his waiver of counsel at the time of his plea and the entry of his plea were unknowing. The district court correctly reached the merits of these claims and correctly denied relief on the merits. The district court acted within the scope of its discretion in reaching the merits of Buchanon's claims of coercion in his waiver of counsel at the time he pleaded and in the entry of his guilty plea and its ruling on the merits of these two claims is not clearly erroneous. I join Judge Wellford's opinion only insofar as it finds that Rule 9(a) bars relief for the claim of a coerced confession and the claim that Buchanon was not present at the degree and sentencing hearing and finds for Buchanon on the merits of his claim that he did not waive counsel at the degree and sentencing hearing.

CELEBREZZE, Senior Circuit Judge, dissenting.

██ I would hold that Rule 9(a), 28 U.S.C. Sec. 2254, bars all claims presented in this long delayed petition. The State of Michigan has established that the 23 year delay has affected adversely its ability to respond to petitioner's Sixth Amendment claim. Indeed, the majority concedes that the prosecutors have no recollection of the events concerning petitioner's trial, that the trial judge has no clear recollection of the proceedings, and that the transcript of the preliminary examination, the prosecutor's files and files concerning petitioner's state court appeals have been lost. Further, the record indicates that neither the trial judge nor the petitioner could remember whether the petitioner was even present at the degree hearing. In light of these facts, one cannot with any degree of probability determine whether the petitioner was informed adequately of his right to counsel for the degree hearing. Although courts cannot presume a waiver of counsel from a silent record, the silence in this instance is due primarily to petitioner's inexcusable delay; the record contains no legitimate explanation for the more than twenty-three year delay which has affected clearly the memories of the only potential witnesses in this case. Accordingly, I respectfully dissent from the portion of this court's decision granting, in part, petitioner's writ of habeas corpus.