*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0408p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CHRISTOPHER L. SOLOMON,

>    *Petitioner-Appellant,*

> *v.*

No. 04-3650

UNITED STATES OF AMERICA,

>    *Respondent-Appellee.*

---

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 97-00609—Herman J. Weber, District Judge.

Argued: June 1, 2006

Decided and Filed:  November 2, 2006

Before:  GILMAN and GRIFFIN, Circuit Judges; DUGGAN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Noel J. Francisco, JONES DAY, Washington, D.C., for Appellant.  Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Noel J. Francisco, Gregory A. Castanias, William L. McCoskey, JONES DAY, Washington, D.C., for Appellant.  Benjamin C. Glassman, William E. Hunt, ASSISTANT UNITED STATES ATTORNEYS, Cincinnati, Ohio, for Appellee. Christopher L. Solomon, Lexington, Kentucky, pro se.

DUGGAN, D. J., delivered the opinion of the court, in which GILMAN, J., joined. GRIFFIN, J. (pp. 8-15), delivered a separate dissenting opinion.

---

## OPINION

---

PATRICK J. DUGGAN, District Judge.  Petitioner Christopher Solomon, currently serving a 240-month sentence following his conviction in the United States District Court for the Southern District of Ohio for knowingly and intentionally possessing with the intent to distribute crack cocaine, appeals the district court's denial of his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  Raising on its own initiative the statute of limitations set forth in the

---

[*]The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L No. 104-132, 110 Stat. 1214, the district court found Petitioner's Section 2255 motion untimely. The district court further concluded that Petitioner was not entitled to equitable tolling and therefore dismissed his motion. We find it unnecessary to decide whether the district court erred in *sua sponte* raising the AEDPA's statute of limitations, because we conclude that Petitioner was entitled to equitable tolling.[1] We therefore **REVERSE** the orders of the district court and **REMAND** to the district court for a decision on the merits of Petitioner's Section 2255 motion.

### Factual and Procedural Background

In 1992, Petitioner was tried and convicted of distribution of crack cocaine and sentenced to 240 months imprisonment. He unsuccessfully appealed his conviction and sentence. *United States v. Solomon*, Case No. 92-3892 (6th Cir. May 5, 1993) (unpublished opinion).

On January 27, 1997, Petitioner filed a motion in the district court requesting transcripts from his criminal case in order to file a Section 2255 motion. Attached to Petitioner's motion was a completed Application to Proceed in Forma Pauperis. Petitioner indicated on this application that he was filing a motion pursuant to Section 2255.

On April 10, 1997, Petitioner filed a motion in the district court entitled "Motion of Notification of Intent to File 28 U.S.C. § 2255 Habus [sic] Corpus to Vacate, Set Aside, or Correct Sentence." In this motion, Petitioner states that he intends to file a Section 2255 motion but "[d]ue to circumstances beyond his control, it is very unlikely that he will be able to file his . . . motion before the April 24, deadline set by Congress." Petitioner explains those circumstances as follows:

> The reason for Inmate Solomon's delay in filing this motion is due to his transfer from the Federal prison in Marion, IL., on March 19, 1997. (At which time he was in the progress of completing his 28 U.S.C. § 2255 motion.) He arrive[d] at the prison in Memphis, TN., on March 27, 1997, to secure his presence as a witness, for a trial that is to be held in Memphis on April 29, 1997. Due to inmate Solomon['s] presence at the Federal prison at Memphis, [he w]as separated him from his legal work at the prison in Marion, IL., until his return. Also, due to inmate Solomon being tran[s]fer[red] from a high security prison to a low security one– has resulted in his being place[d] in segregated housing; Which has prevent[ed] him from any access to any legal material.

On April 14, 1997, Petitioner filed a motion asking the district court to expedite its ruling on his previously filed motion for transcripts, which the district court had not yet addressed. In this motion, Petitioner again states his intent to file a Section 2255 motion, that he is attempting to file the motion by the April 24 deadline, and that without the transcripts he must rely on his memory to present his arguments. The district court took no action on Petitioner's requests for transcripts.

On June 26, 1997, Petitioner filed his Section 2255 motion in which he raises eight claims challenging his conviction. Petitioner signed and dated his motion on June 22, 1997. On August

---

[1]On April 25, 2006, the Supreme Court issued its decision in *Day v. McDonough*, 126 S. Ct. 1675, that in the circumstances presented in the case, it was proper for the district court to raise the AEDPA's statute of limitations on its own initiative and dismiss a state prisoner's habeas corpus petition, filed pursuant to 28 U.S.C. § 2254. Following *Day*, Petitioner and the government filed letter briefs in this case. The government urged this Court to apply *Day* in the Section 2255 context; Petitioner argued that distinctions between the relevant statutes of limitation render *Day* inapplicable to Section 2255. We will leave that issue for another panel, as we find it unnecessary to reach the issue in order to resolve Petitioner's appeal.

27, 1997, the district court issued an order directing the government to file a response to the petition. The government filed its response on September 30, 1997, addressing only the merits of Petitioner's claims.

After Petitioner filed a reply to the government's response on November 21, 1997, he filed additional motions asking the district court to stay the proceedings, grant his request for transcripts, and allow him time to review the transcripts and amend his Section 2255 motion if necessary. On March 2, 1999, almost fifteen months after Petitioner filed his reply and without addressing the motions Petitioner filed in the interim or his January 27 and April 14, 1997 motions requesting transcripts, the district court referred Petitioner's Section 2255 motion to a magistrate judge for disposition and/or recommendation.

Less than two weeks later, the magistrate judge filed his Report and Recommendation ("R&R") in which he *sua sponte* raised the AEDPA's statute of limitations and recommended that Petitioner's motion be dismissed because it was filed more than sixty days after expiration of the April 24, 1997, grace period for filing habeas petitions after the AEDPA's enactment.[2] The magistrate judge determined that the AEDPA's statute of limitations is subject to equitable tolling, but, applying the "rare and exceptional circumstances" test, concluded that Petitioner failed to prove that he is entitled to relief. The magistrate judge reasoned:

> [Petitioner] has offered no explanation of why he delayed from May, 1993, to March, 1997, to prepare his § 2255 Motion, except his request for transcripts. There is no requirement that a § 2255 Motion be accompanied by transcripts, and Mr. Solomon eventually filed his Motion without them. He complains in his Response that he does not have the transcripts, but then proceeds to tell his story of what happened in the crime and what happened afterwards between himself and his trial attorney, none of which would be reflected in the transcripts.[3]

Petitioner filed objections to the R&R, contending that equitable tolling should apply under the circumstances presented.

On April 13, 1999, the district court issued a one and a half page order adopting and incorporating by reference the R&R. In the order, the district court states that it conducted "a *de novo* review of the record, especially in light of Mr. Solomon's objections." Despite the fact that the R&R did not address the merits of the petition, the court summarizes the magistrate judge's opinion as "conclud[ing] that none of the claims raised by defendant is meritorious and therefore recommend[ing] that defendant's Motion to Vacate be denied on its merits."

---

[2] There was no statute of limitations governing the filing of habeas petitions when Petitioner's conviction and sentence became final. While Petitioner was serving his sentence, however, Congress enacted the AEDPA, which added a one-year limitations period for motions filed pursuant to Section 2255, as well as petitions for a writ of habeas corpus filed pursuant to Section 2254. 28 U.S.C. §§ 2244(d)(1) & 2255. The AEDPA became effective on April 24, 1996. Petitioners whose convictions became final before the enactment of the AEDPA were provided a one-year grace period until April 24, 1997, to file motions seeking habeas corpus relief. *Hyatt v. United States*, 207 F.3d 831, 832 (6th Cir. 2000).

[3] While transcripts may not be required, it certainly is understandable that a petitioner would like the transcripts to assist in his or her preparation of a habeas corpus petition.

Petitioner filed a motion for reconsideration on April 26, 1999, in which he again asserted reasons for his delay in filing his Section 2255 motion.[4] On November 29, 2000, the district court appointed counsel to represent Petitioner. Petitioner, through counsel, then filed a memorandum in support of Petitioner's motion for reconsideration on May 3, 2001. In this memorandum, Petitioner pointed out that the magistrate judge's R&R never addressed the merits of the petition. Petitioner further argued that he was entitled to equitable tolling, that the district court erred in not conducting a hearing to enable Petitioner to develop and establish why he was entitled to equitable tolling, and that the district court should have tolled the running of the limitations period when Petitioner filed his notice of intent to file a Section 2255 motion. Petitioner also asked the court to vacate its April 13 order because, Petitioner argued, the court apparently misconstrued and misinterpreted the R&R as addressing the merits of the Section 2255 motion.

On April 2, 2003, the district court conducted a status conference. At the conference, Petitioner's counsel apparently raised the issue of whether the court had the authority to dismiss the petition on procedural grounds in light of *Scott v. Collins*, 286 F.3d 923 (6th Cir. 2002)[5], which had been issued in the interim. The status conference continued on May 21, 2003, and the following day the district court issued an order granting Petitioner 60 days to present additional evidence to support his motion for reconsideration, requiring the government to file a response 20 days thereafter, and allowing Petitioner to file a reply 10 days later.

It does not appear from the record that Petitioner presented additional evidence. There apparently was some confusion among the parties after the district court's May 22, 2003 order, however, regarding the issues the district court wanted them to address in their supplemental pleadings (perhaps because the magistrate judge recommended denial of the Section 2255 motion based on the statute of limitations but the district court referred to the merits of the petition when it adopted the R&R, or perhaps because of the discussion of *Scott* at the status conference). The district court therefore scheduled an additional status conference for May 10, 2004. Prior to the conference, on February 26, 2004, the government filed a "supplemental response" in which it argued that *Scott* does not apply to Section 2255 motions filed by federal prisoners.

On March 24, 2004, the district court issued an order denying Petitioner's motion for reconsideration. The court concluded that *Scott* is inapplicable to Section 2255 motions and that the magistrate judge therefore correctly recommended the dismissal of Petitioner's motion. The district court then identified the factors relevant to determining the appropriateness of equitable tolling set forth in *Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001), but, without addressing those factors, concluded that Petitioner was not entitled to equitable tolling. Focusing on the merits of the claims raised in Petitioner's Section 2255 motion, rather than on the statute of limitations issue, the district court also concluded that Petitioner was not entitled to a certificate of appealability.

Petitioner thereafter filed an appeal and moved this Court for a certificate of appealability. On November 22, 2004, this Court granted Petitioner's request for a certificate of appealability with respect to the following issues:

---

[4]As indicated *infra*, the district court did not rule on Petitioner's motion for reconsideration until March 24, 2004.

[5]In *Scott*, a panel of this Court held, in the context of a petition filed pursuant to 28 U.S.C. § 2254, that the AEDPA's statute of limitations is an affirmative defense that is waived if not timely raised. 286 F.3d at 927. The *Scott* court further held that a court's "*sua sponte* dismissal . . . [is] an impermissible curing of the [Government's] waiver." *Id*. at 930. As suggested *supra*, the Supreme Court's decision in *Day* abrogates *Scott*.

> 1) Whether any issue regarding the timeliness of Petitioner's Section 2255 motion was waived by the Government's failure to raise a limitations defense in its response;
>
> 2) Whether any waiver by the Government was cured by the opportunities that Petitioner had to argue that his motion was timely;
>
> 3) Whether the limitations period should be tolled for equitable reasons.

## Standard of Review

This Court reviews a district court's decision on the issue of equitable tolling *de novo* where the facts are undisputed. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).

## Equitable Tolling

We apply the following factors to determine whether equitable tolling is appropriate: (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. *Dunlap*, 250 F.3d at 1008 (adopting factors set forth in *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988)). These five factors are not comprehensive, nor is each factor relevant in all cases. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir.), *cert. denied*, 537 U.S. 1091, 123 S. Ct. 699 (2002). "The propriety of equitable tolling must necessarily be determined on a case-by-case basis." *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998). This Court has cautioned, however, that equitable tolling should be granted sparingly. *Dunlap*, 250 F.3d at 1008-09.

Petitioner concedes that he was aware of the AEDPA's one-year grace period "at the turn of 1997." Additionally, the government does not claim (and the district court did not find) any prejudice as a result of Petitioner's delay in filing his petition. We therefore must focus our inquiry on the third and fifth factors in the five-prong test set forth above. *See Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir. 2003). Again, those factors are petitioner's diligence in pursuing his rights and his reasonableness in remaining ignorant of the legal requirement for filing his claim.

We will first consider Petitioner's reasonableness in remaining ignorant of the AEDPA's limitations period. As Petitioner informs us, he was ignorant of Congress' adoption of a one-year limitations period for habeas petitions from April 1996, when the statute was enacted, until "the turn of 1997." This delay does not appear unreasonable in light of Petitioner's explanation that "[d]ue to the circumstances that exist at Marion, there is poor circulation of information on changing laws available to inmates."

With respect to Petitioner's diligence in pursuing his rights, Petitioner provides the following description of his activities after learning of the AEDPA's limitations period. At the time, he was incarcerated in Marion, Illinois, where inmates gained access to the law library on a rotational basis.[6] Petitioner explains that during the first few months of 1997, "there was great

---

[6]In his objections to the magistrate judge's R&R, Petitioner described the process by which Marion inmates obtain legal materials:

> Access to the Law Library is non-existence [sic]. Every unit has a cell-like room

competitiveness amongst the inmates jocking [sic] for time in the small unit library at Marion because of the AEDPA time limitation." Petitioner provides that he "diligently worked day and night studying and preparing his 2255 . . . until his unsuspected departure to Memphis on March 19, 1997." It was during this time period, specifically on January 27, 1997, that Petitioner filed a motion in the district court requesting transcripts he indicated he "needs . . . in order to file" his Section 2255 motion.

On March 19, 1997, Petitioner was transferred without his legal materials to a facility in Oklahoma, where he was placed in administrative detention pending his transfer to Memphis, Tennessee. Upon learning that he was being transferred to Memphis to secure his presence as a witness in an upcoming trial, Petitioner immediately asked staff members at the Oklahoma facility to provide him with the address or phone number of the Clerk of the District Court in Cincinnati. According to Petitioner, he wanted to inform the court of his situation.

When he arrived at the Memphis facility– a low security prison– Petitioner was housed in segregated housing due to his maximum security classification. While he attempted to use the law library, he claims access was even more restricted than in Marion. Petitioner continued to seek the address or phone number of the Clerk of the District Court in Cincinnati, and eventually a staff member arranged for Petitioner to call the court. According to Petitioner, he explained his predicament to one of the court clerks and was advised by the clerk to file a "Notification of Intent" to file his 2255 motion. Petitioner claims that he called the court a second time to learn how to caption the motion and what he should state in the body of the motion. Heeding that advice, on April 3, 1997, Petitioner signed and forwarded to the district court his "Motion of Notification of Intent to File 28 U.S.C. § 2255 Habeas Corpus to Vacate, Set Aside, or Correct Sentence." On May 29, 1997, Petitioner was returned to Marion and within a month completed his Section 2255 motion. These facts demonstrate that Petitioner diligently pursued his rights once he became aware of the AEDPA's statute of limitations.

Relying on this Court's decision in *Cook*, 295 F.3d at 521-22, the government argues that Petitioner is not entitled to equitable tolling because he has no excuse for "sitting on his claims" from the time his conviction and sentence became final sometime in 1993 until he began preparing his Section 2255 motion in January 1997. There are at least two reasons why *Cook* is distinguishable from Petitioner's case. First, the petitioner in *Cook* filed his habeas petition almost twelve years after his conviction became final. 295 F.3d at 518. Second, Cook's only excuse for filing the petition almost a month after the grace period expired was that the prison copier was broken a few days before the petition was due. *Id.* at 519, 521-22. Here, Petitioner was impeded from completing his petition more than one month before it was due and one month thereafter because of his transfer to other facilities to secure his testimony in a trial. Additionally, prior to preparing his Section 2255 motion, Petitioner was not sleeping on his rights. Instead, Petitioner was taking steps he believed were necessary to craft his legal motion. As Petitioner explains, based on the procedure for filing motions for habeas relief prior to Congress' adoption of a statute of limitations in the AEDPA, he believed "he had time to enhance his knowledge of the law, while raising his level of formal education."

We do not fault Petitioner for any delay in pursuing his rights based on his efforts– or lack thereof– before the one-year limitations period was enacted. As the magistrate judge noted in his

with less than a hundred law book[s] pertaining to Federal statutes only. There is a typ[e]writer that is shared with a connecting unit, and is available upon pre-request and only if an inmate in the connecting unit has not requeste[d] it first. In order to receive books with case citing, an inmate has to sent [sic] a note to the school department the night in advance, and is only allow[ed] three books a day. An inmate must cite the case number in order to receive the book the following day.

R&R, prior to the enactment of the AEDPA, "a habeas petitioner could file at any time." In fact, before the one-year statute of limitations was adopted, even a twenty-five year delay in filing a habeas petition did not bar its consideration, provided there was no prejudice to the government from the delay. *See, e.g., Buchanon v. Mintzes*, 734 F.2d 274, 281 (6th Cir. 1984)(concluding that delay of 25 years in mounting federal habeas corpus challenge to guilty pleas did not bar petitioner's claim where state had not been prejudiced in its ability to respond to the claims); *see also Strahan v. Blackburn*, 750 F.2d 438, 441-43 n.4 (5th Cir. 1985)(surveying all appellate level cases applying former Rule 9(a) of the Rules Governing Section 2254 cases, which employ the doctrine of laches to determine whether a petition must be dismissed due to delay, and citing cases declining to dismiss petitions where delay was as lengthy as twenty years).

Based on the above, we conclude that this is an appropriate case to equitably toll the AEDPA's statute of limitations. Petitioner's Section 2255 motion therefore is not time-barred and should be reviewed on its merits. Accordingly, the case will be remanded to the district court.

Petitioner argues that on remand this case should be reassigned to a different district court judge. Pursuant to 28 U.S.C. § 2106, we have the authority to order the reassignment of a case on remand. Reassignment, however, "is an 'extraordinary power and should be rarely invoked . . . Reassignments should be made infrequently and with the greatest reluctance.'" *Sagan v. United States*, 342 F.3d 493, 501 (6th Cir. 2003)(quoting *Armco, Inc. v. United Steelworkers of Am., AFL-CIO, Local 169*, 280 F.3d 669, 683 (6th Cir. 2002)). To determine whether reassignment is necessary, we consider (1) whether the original judge would reasonably be expected to have substantial difficulty in putting out of his or her mind previously expressed views or findings; (2) whether reassignment is advisable to preserve the appearance of justice; and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. *Id*. (citation omitted).

We conclude that reassignment is not necessary in this case. There is a benefit to having the district court judge who presided over the defendant's trial review the defendant's subsequently filed Section 2255 motion. It may not be necessary to call the district judge as a witness, as Petitioner suggests, because a district judge simply may rely on his or her recollections of the criminal proceedings in deciding a Section 2255 motion without testifying. *See Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996)(citing *Blackledge v. Allen*, 431 U.S. 63, 74 n.4, 97 S. Ct. 1621, 1629 n.4 (1977)). While the district court's handling of Petitioner's request for habeas relief was not correct, we do not find that it was based on any improper conceptions regarding the merits of Petitioner's claims.

Accordingly, this matter is **REMANDED** to the United States District Court for the Southern District of Ohio for consideration of the merits of the petition for habeas corpus relief.

———————————

**DISSENT**

———————————

GRIFFIN, Circuit Judge, dissenting. Congress imposed new and substantial restrictions on the writ of habeas corpus by its enactment of the landmark Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). At issue in the present case is AEDPA's one-year statute of limitations and its specific tolling provisions for petitions brought pursuant to 28 U.S.C. § 2255. Were it not for *Dunlap v. United States*, 250 F.3d 1001 (6th Cir. 2001), and our subsequent published decisions that have followed *Dunlap*,[1] I would give effect to the plain language of 28 U.S.C. § 2255 and hold that Solomon's petition for habeas corpus relief is barred by the one-year statute of limitations. Furthermore, I would hold that the plain wording of 28 U.S.C. § 2255 does not provide for judicially-created "equitable tolling."

I.

In 1992, petitioner-appellant Christopher Solomon was convicted in the United States District Court for the Southern District of Ohio of knowingly and intentionally possessing cocaine base ("crack") with intent to distribute in violation of 21 U.S.C. § 841(a). In connection with petitioner's timely appeal to this court, transcripts of the trial court proceedings were prepared and furnished to petitioner and/or his counsel. In May 1993, this court affirmed petitioner's conviction and sentence in an unpublished order, *United States v. Solomon*, No. 92-3892 (6th Cir. May 5, 1993).

Over four years later, on June 26, 1997, Solomon filed a pro se petition for a writ of habeas corpus pursuant to the rights afforded him by 28 U.S.C. § 2255. Solomon's petition was a fill-in-the-blank form furnished by the United States District Court (AO 243, revised 5-85). It alleged ineffective assistance of counsel, among other claims, and attached a typewritten argument.

Solomon's petition for a writ of habeas corpus was clearly untimely, pursuant to the plain language of 28 U.S.C. § 2255. Specifically, the habeas corpus provision under which petitioner seeks relief provides for the following one-year period of limitation and tolling periods:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –

(1)     the date on which the judgment of conviction becomes final;

(2)     the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

———————————

[1] In *Dunlap,* a two-judge majority purportedly held that, because 28 U.S.C. § 2255 was a statute of limitations, it was therefore subject to equitable tolling. As noted by Judge Siler in his concurrence, the majority's conclusion with regard to this issue was not necessary for the disposition of the case. For this reason, the *Dunlap* "holding" is arguably obiter dictum. *See U.S. v. Yoon*, 398 F.3d 802, 806 (6th Cir.), *cert. denied*, 126 S. Ct. 548 (2005); BLACK'S LAW DICTIONARY, 8th ed.; Pierre N. Leval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y. UNIV. L. REV. 1249 (2006). However, because this portion of *Dunlap* has been followed in subsequent published decisions of our court, *see, e.g., Cobas v. Burgess*, 306 F.3d 441, 443 (6th Cir. 2002), and *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002), I consider it precedentially binding until such time as it is overruled by the Supreme Court or by this court en banc. 6th CIR. R. 206(c).

(3)     the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)     the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255 ¶ 6.  Congress added the one-year statutory period and its specific tolling provisions as part of AEDPA, effective April 24, 1996.  Because Solomon filed his habeas petition after AEDPA's effective date, AEDPA's statute of limitations and its tolling provisions apply to this case.  *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

II.

In the district court, and on appeal, petitioner does not argue any of the tolling provisions enacted by Congress.  Rather, Solomon asserts that his untimely habeas corpus petition should be excused because of the judicially-created doctrine of "equitable tolling."

Recently, in *Arlington Central Sch. Dist. Bd. of Ed. v. Murphy*, 548 U.S. ___, 126 S. Ct. 2455 (2006), the Supreme Court emphasized the following fundamental principles of statutory construction:

We have "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-254, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992). When the statutory "language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S. Ct. 1942, 147 L. Ed. 2d 1 (2000) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989), in turn quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S. Ct. 192, 61 L. Ed. 442 (1917); internal quotation marks omitted.)

*Id.*, 126 S. Ct. at 2459.

As Justice Scalia has further elaborated:

The text is the law, and it is the text that must be observed.  I agree with Justice Holmes's remark, quoted approvingly by Justice Frankfurter in his article on the construction of statutes:  "Only a day or two ago – when counsel talked of the intention of a legislature, I was indiscreet enough to say I don't care what their intention was.  I only want to know what the words mean."[28]  And I agree with Holmes's other remark, quoted approvingly by Justice Jackson:  "We do not inquire what the legislature meant; we ask only what the statute means."[29]

───────────────

[28] Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 538 (1947).

[29] Oliver Wendell Holmes, *Collected Legal Papers* 207 (1920), *quoted in Schwegmann Bros. v. Calvert Distillers Corp.,* 341 U.S. 384, 397, 71 S. Ct. 745, 95 L. Ed. 1035 (1951) (Jackson, J., concurring).

ANTONIN SCALIA, A MATTER OF INTERPRETATION: FEDERAL COURTS AND THE LAW (PRINCETON UNIV. PRESS 1997).

To date, the Supreme Court has yet to rule whether the judiciary is authorized to rewrite 28 U.S.C. § 2255 to include other "equitable" grounds of tolling not provided for by Congress. *See Pace v. Diguglielmo*, 544 U.S. 408, 418 n.8 (2005). Although Justices Stevens and Souter have suggested that AEDPA's statutes of limitation may be subject to equitable tolling, *Duncan v. Walker*, 533 U.S. 167, 182-84 (2001) (Stevens, J. concurring, in part, joined by Souter, J.), the majority of the Court has construed AEDPA according to its text: "Our task is to construe what Congress has enacted. We begin, as always, with the language of the statute." *Duncan*, 533 U.S. at 172.

Moreover, the Court has rejected the argument that "equitable tolling" should apply to plain, specific, and detailed statutes of limitation. In *United States v. Brockamp*, 519 U.S. 347 (1997), a unanimous Court rejected the respondent's invitation to rewrite "for nonstatutory equitable reasons" a statute of limitations enacted by Congress for the filing of tax refunds. Justice Breyer, writing for all nine Justices, explained:

> The taxpayers rest their claim for equitable tolling upon *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), a case in which this Court considered the timeliness of an employee's lawsuit charging his Government employer with discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. The Court found the lawsuit untimely, but nevertheless tolled the limitations period. It held that the "rule of equitable tolling" applies "to suits against the Government, in the same way that it is applicable" to Title VII suits against private employers. 498 U.S., at 94-95. The Court went on to say that the "same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Id.*, at 95-96.

> The taxpayers, pointing to *Irwin*, argue that principles of equitable tolling would have applied had they sued private defendants, *e.g.*, had they sought restitution from private defendants for "Money Had and Received." See C. Keigwin, Cases in Common Law Pleading 220 (2d ed. 1934). They add that given *Irwin's* language, there must be a "presumption" that limitations periods in tax refund suits against the Government can be equitably tolled. And, they say, that "presumption," while "rebuttable," has not been rebutted. They conclude that, given *Irwin*, the Ninth Circuit correctly tolled the statutory period for "equitable" reasons.

> In evaluating this argument, we are willing to assume, favorably to the taxpayers but only for argument's sake, that a tax refund suit and a private suit for restitution are sufficiently similar to warrant asking *Irwin's* negatively phrased question: Is there good reason to believe that Congress did *not* want the equitable tolling doctrine to apply? But see *Flora v. United States*, 362 U.S. 145, 153-154 (1960) (citing *Curtis's Administratrix v. Fiedler*, 2 Black 461, 479 (1863)) (distinguishing common-law suit against the tax collector from action of assumpsit for money had and received); *George Moore Ice Cream Co. v. Rose*, 289 U.S. 373, 382-383 (1933); see also Plumb, Tax Refund Suits Against Collectors of Internal Revenue, 60 Harv. L. Rev. 685 687 (1947) (describing collector suit as a fiction solely designed to bring the Government into court). *We can travel no further, however, along Irwin's road, for there are strong reasons for answering Irwin's question in the government's favor*.

> Section 6511 sets forth its time limitations in unusually emphatic form. Ordinarily limitations statutes use fairly simple language, which one can often plausibly read

as containing an implied "equitable tolling" exception. See, *e.g.,* 42 U.S.C. § 2000e–16(c) (requiring suit for employment discrimination to be filed "[w]ithin 90 days of receipt of notice of final [EEOC] action . . ."). But § 6511 uses language that is not simple. It sets forth its limitations in a highly detailed technical manner, that, linguistically speaking, cannot easily be read as containing implicit exceptions.

* * *

To read an "equitable tolling" provision into these provisions, one would have to assume an implied exception for tolling virtually every time a number appears. To do so would work a kind of linguistic havoc. Moreover, such an interpretation would require tolling, not only procedural limitations, but also substantive limitations on the amount of recovery – a kind of tolling for which we have found no direct precedent. *Section 6511's detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together, indicate to us that Congress did not intend courts to read other unmentioned, open-ended, "equitable" exceptions into the statute that it wrote.*

*Brockamp*, 519 U.S. at 349-50, 352 (emphasis added).

A year later, in *United States v. Beggerly*, 524 U.S. 38 (1998), the Supreme Court followed *Brockamp* and held that the 12-year statute of limitation contained in the Quiet Title Act, 28 U.S.C. § 2409a, was not subject to equitable tolling. In doing so, the Court held, "Equitable tolling is not permissible when it is inconsistent with the text of the relevant statute." *Beggerly*, 524 U.S. at 48.

Furthermore, as the Supreme Court cautioned in *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 (1984):

Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants. As we stated in *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980), "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."

In the civil arena, the Michigan Supreme Court has cited separation of powers concerns in rejecting the application of equitable tolling to a clear and unambiguous statute of limitation:

Indeed, if a court is free to cast aside, under the guise of equity, a plain statute such as § 3145(1) simply because the court views the statute as "unfair," then our system of government ceases to function as a representative democracy. No longer will policy debates occur, and policy choices be made, in the Legislature. Instead, an aggrieved party need only convince a willing judge to rewrite the statute under the name of equity. While such an approach might be extraordinarily efficient for a particular litigant, the amount of damage it causes to the separation of powers mandate of our Constitution and the overall structure of our government is immeasurable.

*DeVillers v. Auto Club Ins. Ass'n*, 702 N.W.2d 539, 556-57 (Mich. 2005). *See also Secura Ins. Co. v. Auto-Owners Ins. Co.*, 605 N.W.2d 308 (Mich. 2000).

Absent a constitutional violation, it is our role as judges to faithfully ascertain and give effect to the laws as written by Congress. We must not succumb to the temptation to rewrite the law to comport with our subjective notions of fairness and equity. Otherwise, our nation's laws enacted

by Congress are meaningless. *See* ROBERT H. BORK, THE TEMPTING OF AMERICA: THE POLITICAL SEDUCTION OF THE LAW 112 (Free Press 1997).

Were I permitted to do so, I would apply the rationale of *Brockamp* and *Beggerly* to the limitation period of 28 U.S.C. § 2255 specified by Congress in its enactment of AEDPA. On this issue, I agree with the following observations of the District Court for the Eastern District of Michigan, which stated:

> Section 2255 expressly lists four different events, the latest of which determines when the limitations period begins to run. 28 U.S.C. § 2255. The detail of § 2255 and its direct and express determination of when the time limit begins indicates that Congress did not intend to permit courts to read other unmentioned and open-ended equitable exceptions into the statute.

*Giles v. United States*, 6 F. Supp. 2d 648, 650 (E.D. Mich. 1998), overruled by *Dunlap*. *Giles* applies, in effect, the traditional and widely-accepted canon of statutory construction *expressio unius est exclusio alterius* (the mention of one thing implies the exclusion of another). *See Cavanaugh v. Cardinal Local Sch. Dist.*, 409 F.3d 753, 756 (6th Cir. 2005), and *Ohio Co. v. Nemecek*, 98 F.3d 234 (6th Cir. 1996). Consistent with the analysis of *Brockamp* and *Beggerly*, 28 U.S.C. § 2255 should not be rewritten by the judiciary because it is a detailed statute of limitation containing specific tolling provisions agreed upon by Congress.

In *Dunlap v. United States,* our court did not cite or attempt to distinguish *Brockamp* and *Beggerly*. Instead, after relying on *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990), for the proposition that there is a rebuttable presumption that equitable tolling applies to *civil actions* against the government, we summarily concluded that, because the limitation provision of 28 U.S.C. § 2255 is a statute of limitation, rather than a jurisdictional bar, it is subject to judicial tolling. In a footnote, the *Dunlap* panel cited opinions from our sister circuits to the same effect. For the most part, these follow-the-leader decisions contain little analysis and fail to acknowledge the limits of *Irwin* subsequently established by the Supreme Court in *Brockamp* and *Beggerly*. *Harris v. Hutchinson*, 209 F.3d 325 (4th Cir. 2000), and *Calderon v. United States Dist. Court for the Cent. Dist. of Cal. (Beeler)*, 128 F.3d 1283, 1288 n.4 (9th Cir. 1997), *overruled on other grounds,* 163 F.3d 530 (9th Cir. 1998) (en banc), are two of the very few decisions that even attempt to distinguish *Brockamp* and/or *Beggerly*. These circuit court decisions that attempt to confine the precedential effect of *Brockamp* and *Beggerly* to the tax code and quiet title cases are not persuasive. In my view, the decisions of our sister circuits should not be followed.

First, unlike *Irwin*, the present case is not a *civil action* against the government seeking *civil remedies*, but rather a collateral attack on a criminal conviction through a petition for habeas corpus. The collateral review of criminal convictions involve considerations that are considerably different than actions against the government for damages or other civil relief.

Second, the subsequent Supreme Court decisions of *Brockamp* and *Beggerly* have clarified the limited scope of *Irwin*. In particular, *Brockamp* held that judicial tolling is not permitted when Congress has enacted a detailed and specific statute of limitations. Later, in *Beggerly*, the Supreme Court held that judicial tolling may not be imposed if such tolling is contrary to the *text* of the statute. *Brockamp* and *Beggerly* clearly restrain the open-ended use of judicial tolling envisioned and applied by some courts in all actions in which the government is a party.

Third, and most fundamentally, the separation of powers mandated by our Constitution is violated when, for perceived reasons of "fairness" or equity, the judicial branch rewrites clear and unambiguous laws enacted by the legislature. Without pretense, and "for reasons of equity," this

is what the courts have done in imposing "equitable tolling" to the specific and detailed statute of limitations enacted by Congress for habeas corpus petitions.

### III.

Nonetheless, I recognize that in *Dunlap v. United States*, 250 F.3d 1001 (6th Cir. 2001), and subsequent published opinions, our court has concluded that the one-year limitation period of 28 U.S.C. § 2255 is subject to the doctrine of "equitable tolling." Until these precedentially binding decisions are overruled, I am bound to follow and apply them. 6TH CIR. R. 206(c).

In *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988), we established a five-factor test for judicial tolling in *civil cases*. Later, in *Dunlap*, a panel of this court transferred this civil test to the habeas corpus collateral review of criminal convictions. In doing so, we transferred from our civil jurisprudence considerations that are incongruous to our criminal law. In particular, under *Andrews*, a petitioner's ignorance of the law is a consideration in excusing his compliance with the law. Ignorance of the law has never been an excuse in the criminal law. *See generally Texaco, Inc. v. Short*, 454 U.S. 516, 546 (1982), and *Lambert v. Calif.*, 355 U.S. 225, 228-29 (1957). In addition, under the *Andrews* analysis, the "*reasonableness*" of the petitioner's *ignorance* must now be considered. In my view, the reasonableness of an accused's ignorance of the law should have no relevance in the collateral review of criminal convictions.

Significantly, our court stands alone within the circuits in employing our peculiar test to evaluate the timeliness of petitions for habeas corpus. The other circuits that recognize some form of equitable tolling to 28 U.S.C. § 2255 or 28 U.S.C. § 2254 do so, for the most part, only for "extraordinary circumstances" beyond the petitioner's control. *See, e.g., Satterfield v. Johnson*, 434 F.3d 185 (3d Cir.), *cert. denied*, — U.S. —, —S. Ct. —, 2006 WL 1881221 (No. 06-5046 U.S. Oct. 2, 2006); *Cordle v. Guariniano*, 428 F.3d 46 (1st Cir. 2005); *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1989).

Our unique test balances the following considerations:

(1)     the petitioner's lack of [actual] notice of the filing requirement;

(2)     the petitioner's lack of constructive knowledge of the filing requirement;

(3)     the petitioner's diligence in pursuing his rights;

(4)     absence of prejudice to the respondent; and

(5)     the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Dunlap*, 250 F.3d at 1008 (citing *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988)).

After applying the *Dunlap/Andrews* factors to the present case, I come to a conclusion which is the opposite of that reached by the majority.

1.     *Petitioner's Lack of Actual Notice of the Filing Requirement.*

Solomon admits that "at the turn of 1997" he knew that, by operation of the judicially-created one-year grace period accepted by most courts, he had only until April 24, 1997, to file his habeas corpus petition. The propriety of the one-year grace period that many courts have imposed for constitutional reasons, *see Hyatt v. United States*, 207 F.3d 831 (6th Cir. 2000), is not at issue in the

present case because Solomon's June 26, 1997, petition was over two months late, even with the benefit of a one-year grace period.[2]

### 2.      *The Petitioner's Lack of Constructive Knowledge of the Filing Requirement.*

Because Solomon concedes actual knowledge of the filing deadline "at the turn of 1997," his constructive knowledge after that time is not at issue. Before then, AEDPA's statute of limitation and tolling exceptions are "clear provisions" that afforded constructive notice to him. *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004).

### 3.      *The Petitioner's Diligence in Pursuing His Rights.*

The majority concludes that Solomon was diligent in pursuing his rights. I respectfully disagree. Solomon waited over four years after this court affirmed his conviction and sentence to file his petition for habeas corpus. In my view, Solomon's delay of over four years "to enhance his knowledge of the law, while raising his level of formal education" was not diligent. As we stated in *Cook v. Stegall*, 295 F.3d 517, 522 (6th Cir. 2002), a petitioner would "never have been in this hurried state" had he not waited years to file his habeas petition.

In addition, I am not persuaded by Solomon's argument regarding his alleged lack of access to his previously furnished transcripts. It is apparent from his petition filed on June 26, 1997, that the transcripts were not necessary for its filing. *See Brown v. Shannon*, 322 F.3d 768, 774 (3d Cir. 2003); *Lloyd v. Vannatta*, 296 F.3d 630, 633-34 (7th Cir. 2002); *Donovan v. Star of Maine*, 276 F.3d 87, 93 (1st Cir. 2002); *Gassler v. Bruton*, 255 F.3d 492, 495 (8th Cir. 2001). The fill-in-the-blank habeas form that petitioner used could have been easily filed before the one-year grace period deadline of April 24, 1997.

Also, as argued by the government, transfers between prisons are routine and should be expected. *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). Solomon offers no explanation regarding why his "legal materials" could not have been taken or delivered to him.

Finally, Solomon alleges that while in prison he had a telephone conversation with the Clerk of the United States District Court for the Southern District of Ohio. According to Solomon, the Clerk advised him to file a "Notification of Intent to File a 2255 Motion." I find this claim not to be credible. It lacks evidentiary support and is contrary to the practice and custom of the clerk *not* giving legal advice to litigants and prisoners. In any event, in *Allen*, 366 F.3d at 403, we rejected a claim that an attorney's erroneous legal advice should lead to equitable tolling:

> This court has held, however, that a petitioner's reliance on the unreasonable and incorrect advice of his or her attorney is not a ground for equitable tolling. *Jurado v. Burt*, 337 F.3d 638, 644-45 (6th Cir. 2003). Although not directly on point, *Jurado* suggests that equitable tolling is not appropriate in this case. In *Jurado*, the attorney (unintentionally) misled the petitioner; in the present case, Allen's attorney simply admitted that he was not an expert in federal habeas procedures.

*See also United States v. Heller*, 957 F.2d 26, 27-28 (1st Cir. 1992).

### 4.      *Absence of Prejudice to Respondent.*

The record contains no documented evidence of actual prejudice to the government. However, some hardship to the government is likely because of the staleness of the evidence.

---

[2]For this reason, I express no opinion on the judicially-created one-year grace period.

      5.        *The Petitioner's Reasonableness in Remaining Ignorant of the Legal Requirements for Filing his Claim.*

The "reasonableness of the petitioner's ignorance" (to the extent that this nonsequitur can be evaluated) is not at issue because petitioner had actual and/or constructive knowledge of the law.

After balancing the five factors set forth in *Andrews v. Orr*, I conclude that Solomon has not sustained his burden of establishing grounds for equitable tolling. *See Allen*, 366 F.3d at 403.

## IV.

Finally, for the reasons stated in *Day v. McDonough*, ___ U.S. ___, 126 S. Ct. 1675 (2006), I would also hold that the district court did not abuse its discretion by sua sponte raising and deciding the statute of limitation defense that the government did not timely assert. Although the Court in *Day* decided this issue in the context of a petition brought pursuant to 28 U.S.C. § 2254, I find its rationale equally applicable to actions brought pursuant to 28 U.S.C. § 2255.

## V.

For these reasons, I respectfully dissent. I would affirm the dismissal of Solomon's untimely petition for habeas corpus.